J-S38038-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DAVID HASSAN ALI HAYWOOD | |
| | No. 3644 EDA 2016 |

Appeal from the Order Entered November 16, 2016
in the Court of Common Pleas of Monroe County Criminal Division
at No(s):CP-45-CR-0000876-2016

BEFORE: GANTMAN, P.J., SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                     **FILED AUGUST 21, 2017**

The Commonwealth appeals from the order entered in the Monroe County Court of Common Pleas denying the motion for joinder and consolidation with **_Commonwealth v. David Hassan Ali Haywood_**, 3645 EDA 2016.[1]   The order further provided that the Commonwealth would not be permitted to introduce Appellee, David Hassan Ali Haywood's, prior convictions in its case in chief.  The court deferred ruling on the remainder of the Commonwealth's Pa.R.Evid. 404(b) motion regarding other acts evidence until the time of trial.  We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] We note that the motion for joinder pursuant to Pa.R.Crim.P. 582 was filed in **_Haywood_**, 3645 EDA 2016, which is also before this panel on appeal. The Commonwealth has filed virtually identical briefs in each case.  The trial court filed one Pa.R.A.P. 1925(a) opinion for both cases.

The trial court summarized the facts and procedural posture of this case as follows:

On April 4, 2016, while out on bail in case No. 115, [Appellee] was again arrested and charged with possessory drug offenses, as well as other crimes. This second set of charges stemmed from a domestic altercation that occurred between [Appellee] and his girlfriend, Shanice Armstrong-Woods.

Specifically, at approximately 4:30 p.m., officers from the Pocono Township Police Department were dispatched to the residence in response to a 911 call. A thirteen-year old boy reported that his mother and her boyfriend, [Appellee], were involved in a verbal argument which eventually turned physical. The boy also told emergency dispatchers that [Appellee] possessed a knife.

Upon arrival, officers observed [Appellee] exiting the residence. They made contact with [Appellee], and noticed that he was bleeding from his head. Upon speaking with [Appellee], the affiant immediately noticed an intense odor of marijuana emanating from his person. [Appellee] was then patted down, handcuffed, and advised that he was being detained until the scene could be secured. When asked what had happened, [Appellee] told police he had fallen and hit his head. [Appellee] added that he was trying to get away from his girlfriend and denied that a physical altercation had occurred.

Police then entered the residence in order to ensure the safety of the occupants. Upon entry, police detected a strong odor of marijuana. After ensuring everyone's safety, police questioned [Appellee's] girlfriend about the smell. She informed police that [Appellee] had smoked marijuana inside the home earlier in the day. She also provided details regarding the nature of the incident. She related that the couple had had a verbal argument over finances. She said that as [Appellee] attempted to leave, she had taken his car keys. As the argument escalated, her son briefly picked up a kitchen knife and then put it down to call 911. She said that [Appellee] then picked up the knife and demanded his keys.

An ambulance arrived to treat [Appellee's] head injury. Prior to allowing [Appellee] to enter the ambulance, police conducted a second pat down of [Appellee's] person. This time police discovered a small bag of marijuana in [Appellee's] pocket. Based on this finding and the odor in the residence, police applied for and received a search warrant for the residence as well as vehicles located on the property. The search yielded small amounts of marijuana and cocaine, drug paraphernalia, and approximately 750 bags of suspected heroin. The substances were subsequently tested and confirmed.

As a result, [Appellee] was charged with PWID-Heroin, Possession of Heroin, Possession of Cocaine,[2] Possession of a Small Amount of Marijuana,[3] two counts of Possession of Drug Paraphernalia,[4] Terroristic Threats,[5] Simple Assault,[6] and Harassment.[7]

\* \* \*

In June of 2016, several relevant submissions were filed or served. On June 21, 2016, [Appellee] filed in case No. 876 an omnibus motion seeking suppression of evidence. At or around the same time, the Commonwealth served on [Appellee] notices pursuant to Pa.R.E. 404(b) of its intent to introduce at trial "other acts" evidence consisting of "prior bad acts" perpetuated by [Appellant]. Specifically, the Commonwealth provided notice of its intent to introduce in each of these cases: (a) [Appellee's] acts and conduct and the crimes charged in the other case ("Cross-

---

[2] 35 P.S. § 780-113(a)(30).

[3] 35 P.S. § 780-113(a)(31).

[4] 35 P.S. § 780-113(a)(32).

[5] 18 Pa.C.S. § 2706(a)(1).

[6] 18 Pa.C.S. § 2701(a)(3).

[7] 18 Pa.C.S. § 2709(a)(4).

Case Evidence"); and (b) [Appellee's] seven prior convictions in New Jersey for possession or possession with the intent to deliver drugs ("Prior PWID Evidence"). Thereafter, on June 27, 2016, the Commonwealth filed a motion to join these cases for trial.

R.R. at 22a-25a (footnote omitted).[8]

On October 27, 2016, a hearing was held on Appellee's "objection to the Commonwealth's 404(b) notice in both cases." *Id.* at 217a.

[The Commonwealth:] And I would point out first, if we could look at it from a 404(b) standpoint, the first offense involved—excuse me. The first case involved a traffic stop where [Appellee] was then found to be in possession of 210 bags of heroin as well as some marijuana, and he was driving under the influence of marijuana. At that point, Your Honor, he had asserted that it was—the 200 bags were personal use. Then we—that was in November of 2015.

Then in early April of 2016, the facts giving rise to the case at 876 Criminal 2016, Pocono Township officers responded to [Appellee's] address for a domestic related call. At that time, [Appellee] was exiting the residence, was believed to be impaired. There was an odor of marijuana. When he was searched as part of his detention, when the officers were responding to the domestic, he was found to be in possession of a small amount of marijuana. There was then a search warrant executed upon the residence, and there was 700 bags of heroin located inside of the residence. And I would also note that both in the search of the vehicle as well as the search of the house a large sum of money was also recovered from each.

So if the cases were separated, Your Honor, the Commonwealth would be seeking to use evidence of the other offense as 404(b) notice in order to establish, most

---

[8] For the parties' convenience, we refer to the reproduced record where applicable.

importantly, intent. These are possession with intent to deliver offenses.

[Appellee], to my understanding, he's always asserted that these packets of heroin have been for personal use and not related to any sort of transaction in illegal narcotics.

\* \* \*

And so we would seek to use the evidence of one as 404(b) evidence in the other.

\* \* \*

With regard to the other [7 PWID[9]] offenses, Your Honor, the Commonwealth is not seeking to introduce those, obviously, as a propensity to commit crimes; but it goes first in rebuttal to [Appellee's] assertion that this is personal use and also to his intent, which is an element of the offense of PWID, that he, in fact, was possessing this heroin with intent to deliver it.

\* \* \*

[Defense counsel]: Your Honor, the seven prior PWIDs,[10] you have to—we have to view this in a practical manner. The jury is going to hear that, and they are going to say, Well, there is absolutely no way he doesn't have a propensity to deal in heroin. That is the way it's going to be done. So it comes with a very high risk of unfair prejudice. And I don't think that we can simply presume in such circumstances that a [c]ourt instruction is going to ironclad steel their minds about making that inference.

*Id.* at 223a-25a, 227a.

---

[9] *Id.* at 226a-27a.

[10] Appellee had seven prior convictions in New Jersey for PWID. *See id.* at 57a-58a.

The court entered the following order:

> AND NOW, this 15th day of November, 2016, it appearing that the Order dated November 1, 2016, inadvertently omitted a portion of the Court's ruling and contained an incorrect docket number in the caption, the Order dated November 1, 2016 is VACATED and replaced with the following:

> After hearing, it is ORDERED that the Commonwealth's motion for joinder and consolidation of these cases is DENIED.

> The Commonwealth will not be permitted to introduce [Appellee's] prior convictions in its case in chief.

> The remainder of the Commonwealth's motion regarding other acts evidence will be decided at time of trial.[11]

*Id.* at 30a. This timely appeal followed. The Commonwealth filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and the trial court filed a responsive opinion.

---

[11] We note that

> [S]ection 5505 of the Judicial Code provides that "a court . . . may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." 42 Pa.C.S.A. § 5505. However, this thirty day limit only applies to the modification of final orders; interlocutory orders can be modified beyond the thirty-day time frame.

*Commonwealth v. James*, 12 A.3d 388, 391 (Pa. Super. 2010), *rev'd on other grounds*, 69 A.3d 180 (Pa. 2013) (some citations omitted). In the instant case, the trial court modified the interlocutory order within thirty days.

The Commonwealth raises the following issues for our review:

Whether the lower court erred in failing to rule on the Commonwealth's evidence of other acts evidence identified as the Cross-Case Evidence as provided in the Commonwealth's Pa.R.Evid. 404(b) Notice and allowing for modification of the admissibility of such evidence during trial by the trial judge, contrary to Pa.R.Crim.P. 580?

Whether the lower court abused its discretion in denying the Commonwealth's Motion to Join pursuant to Pa.R.Crim.P. 582(A) the Instant Matter with **Commonwealth v. David Haywood**, an issue properly before this Court, based upon the erroneous denial of the admission of the Pa.R.Evid. 404(b) evidence?

Whether the lower court abused its discretion in denying the admission at trial of all the Commonwealth's proffered Pa.R.Evid. 404(b) evidence, including the Prior PWI[D] Evidence and Cross-Case Evidence as provided in the Commonwealth's 404(b) notice?

Appellant's Brief at 5.[12]

As a prefatory matter, we consider whether the trial court's deferred ruling on the other acts evidence identified as the "Cross-Case Evidence" is appealable. In the case *sub judice*, the trial court found the issue was unappealable pursuant to Pa.R.A.P. 311(d). **See** R.R. at 32a. We agree.

Rule 311 provides, in pertinent part, as follows:

(d) **Commonwealth appeals in criminal cases.**—In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.

---

[12] For ease of disposition, we have reordered the Commonwealth's issues.

Pa.R.A.P. 311(d). Pursuant to Pa.R.A.P. 904, "[w]hen the Commonwealth takes an appeal pursuant to Pa.R.A.P. 311(d), the notice of appeal shall include a certification by counsel that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 904(e).

When the Commonwealth appealed the November 3rd order they filed a statement in compliance with Pa.R.A.P. 311(d) stating as follows:

> The undersigned hereby certifies that the Court Order dated November 1, 2016, **denying the Commonwealth's Motion for Joinder and denying the Commonwealth's 404(b) evidence as it related to [Appellee's] prior convictions for possession with intent to deliver**, will substantially handicap the prosecution of [Appellee] in the above-captioned case.

Notice of Appeal, 11/18/16 (emphasis added).

> Under [Section 311(d)], the Commonwealth may appeal if it certifies the interlocutory order will terminate or substantially handicap the prosecution . . . . Such certification is required as a means of preventing frivolous appeals and appeals intended solely for delay. Failure to include the certification renders the questioned order unappealable.

***Commonwealth v. Brister***, 16 A.3d 530, 533–34 (Pa. Super. 2011) (citations and quotation marks omitted).

In the case *sub judice*, the Commonwealth's Rule 311(d) certification did not refer to the deferred ruling on the Cross-Case evidence. Therefore, the issue is unappealable. ***See Brister***, 16 A.3d at 533-34.

Next, the Commonwealth contends the trial court abused its discretion in denying the motion to join. The motion for joinder pursuant to

Pa.R.Crim.P. 582 was not filed in the instant case. Furthermore, as the trial court opined, an order denying a motion for joinder is unappealable under Rule 311(d). *See* R.R. at 31a. In **Commonwealth v. Woodard**, 136 A.3d 1003 (Pa. Super. 2016), *appeal denied*, 158 A.3d 1242 (Pa. 2016), this Court opined:

> an order denying joinder, like an order granting severance, is interlocutory and thus not appealable. Here, the Commonwealth is free to seek conviction on all counts, against each defendant, in . . . separate trials. Therefore, denial of the motion for joinder does not terminate or substantially handicap the prosecution and is not appealable under Rule 311(d). To expand Rule 311(d) to encompass such interlocutory review would be to disturb the orderly process of litigation. Strict application of the Rule assures that trials will go forward as scheduled.

**Id.** at 1007 (citations and quotation marks omitted).

Lastly, the Commonwealth contends the trial court abused its discretion in denying the admission of its proffered Rule 404(b) evidence. **See** Commonwealth's Notice of Prior Bad Acts, R.R. at 59a-61a. The Commonwealth argues that "all of [its] proffered Rule 404(b) evidence is admissible as it is offered to support intent, common scheme, and/or knowledge of drug trafficking and the lower court's decision to deny the admission of the prior PWI[D] evidence and cross-case evidence is an abuse of discretion."[13] Commonwealth's Brief at 16. The Commonwealth contends

---

[13] We note that the Commonwealth's Rule 311(d) statement does not raise the issue of the cross-case evidence. **See Brister**, 16 A.3d at 533–34.

"the evidence proffered by [it] in this case has a proper purpose as permitted by Rule 404(b) and as the Commonwealth has demonstrated a need for this evidence and shown that the probative value of the evidence outweighs any prejudicial effect (including use of a cautionary instruction), the evidence should be permitted at trial." *Id.* at 23-24.

Our review is governed by the following principles:

> Evidence is admissible if it is relevant—that is, if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact—and its probative value outweighs the likelihood of unfair prejudice. Admissibility of evidence is within the sound discretion of the trial court and we will not disturb an evidentiary ruling absent an abuse of that discretion. Moreover, evidence of prior bad acts, while generally not admissible to prove bad character or criminal propensity, is admissible when proffered for some other relevant purpose so long as the probative value outweighs the prejudicial effect. ***Commonwealth v. Morris***, [ ] 425 A.2d 715, 720 ([Pa.] 1981) (law does not allow use of evidence which tends solely to prove accused has criminal disposition). Such evidence may be admitted to show motive, identity, lack of accident or common plan or scheme. ***Commonwealth v. Briggs***, [ ] 12 A.3d 291, 337 ([Pa.] 2011) (Rule 404(b)(2) permits other acts evidence to prove motive, lack of accident, common plan or scheme and identity). In order for other crimes evidence to be admissible, its probative value must outweigh its potential for unfair prejudice against the defendant, Pa.R.E. 404 (b)(2), and a comparison of the crimes proffered must show a logical connection between them and the crime currently charged.

***Commonwealth v. Hicks***, 156 A.3d 1114, 1125 (Pa. 2017) (some citations and quotation marks omitted).

- 10 -

After careful consideration of the record, the parties' briefs, and the well-reasoned decision of the Honorable Jonathan Mark, we affirm on the basis of the trial court's decision. **See** Trial Ct. Op., 1/24/17, at 17-27 (holding the prejudicial effect of admitting the seven prior PWID convictions during the Commonwealth's case in chief would outweigh its probative value). Accordingly, having discerned no error of law or abuse of discretion, we affirm the order. **See Hicks**, 156 A.3d at 1125.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/2017

- 11 -

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA          :
                                      :
          v.                          :   NO.   115 CR 2016
                                      :         876 CR 2016
                                      :
                                      :
DAVID HAYWOOD,                        :
                                      :
          Defendant                   :         3645 EDA 2016
                                      :
                                      :

## OPINION IN SUPPORT OF ORDERS PURSUANT TO Pa. R.A.P. 1925(a)

The Commonwealth has filed interlocutory appeals, replete with certification statements under Pa.R.A.P. 311(d), from our orders that ruled on the pretrial filings of both parties. We directed the Commonwealth to file statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth complied. We now file this opinion in accordance with Pa.R.A.P. 1925(a).

## BACKGROUND

The relevant facts and procedural history of and the interplay between these cases may be summarized as follows:

Case No. 115

On November 27, 2015, Trooper Petrucci of the Pennsylvania State Police initiated a traffic stop of Defendant's vehicle which, while making a turn, almost collided with his marked patrol car. During his interaction with Defendant, Trooper Petrucci noticed several indicia of intoxication. He also observed tiny pieces of suspected marijuana on Defendant's lap.

1



Based on these observations, Trooper Petrucci asked Defendant to step out of the vehicle. Defendant complied and consented to a search of his person. The search uncovered a small baggie of suspected marijuana and $995 in cash. Defendant was placed under arrest and his vehicle was searched incident to arrest. During the search of the vehicle, two bundles of heroin, consisting of a total of 100 small baggies, were discovered concealed inside magazines.

As a result, in case No. 115, Defendant was arrested and charged with Possession With the Intent to Deliver (PWID) Heroin, Possession of Heroin, several counts of Driving Under the Influence (DUI), and summary traffic offenses.

Defendant was taken for processing. The marijuana and heroin were field tested and confirmed. Defendant consented to a legal blood draw. During a subsequent interview, Defendant admitted that he had smoked marijuana and told police that he snorts eight to ten bags of heroin per day.

Defendant filed an omnibus motion seeking suppression of evidence. On May 19, 2016, the Honorable Stephen M. Higgins issued an Opinion and Order denying the motion. We incorporate Judge Higgins' opinion, which provides additional background information, into this Opinion by reference.

Case No. 876

On April 4, 2016, while out on bail in case No. 115, Defendant was again arrested and charged with possessory drug offenses, as well as other crimes. This second set of charges stemmed from a domestic altercation that occurred between Defendant and his girlfriend, Shanice Armstrong-Woods.

Specifically, at approximately 4:30 p.m., officers from the Pocono Township Police Department were dispatched to the residence in response to a 911 call. A thirteen-year old boy reported that his mother and her boyfriend, Defendant, were involved in a verbal argument which eventually turned physical. The boy also told emergency dispatchers that Defendant possessed a knife.

Upon arrival, officers observed Defendant exiting the residence. They made contact with Defendant, and noticed that he was bleeding from his head. Upon speaking with Defendant, the affiant immediately noticed an intense odor of marijuana emanating from his person. Defendant was then patted down, handcuffed, and advised that he was being detained until the scene could be secured. When asked what had happened, Defendant told police he had fallen and hit his head. Defendant added that he was trying to get away from his girlfriend and denied that a physical altercation had occurred.

Police then entered the residence in order to ensure the safety of the occupants. Upon entry, police detected a strong odor of marijuana. After ensuring everyone's safety, police questioned Defendant's girlfriend about the smell. She informed police that Defendant had smoked marijuana inside the home earlier in the day. She also provided details regarding the nature of the incident. She related that the couple had had a verbal argument over finances. She said that as Defendant attempted to leave, she had taken his car keys. As the argument escalated, her son briefly picked up a kitchen knife and then put it down to call 911. She said that Defendant then picked up the knife and demanded his keys.

3

An ambulance arrived to treat Defendant's head injury. Prior to allowing Defendant to enter the ambulance, police conducted a second pat down of Defendant's person. This time police discovered a small bag of marijuana in Defendant's pocket. Based on this finding and the odor in the residence, police applied for and received a search warrant for the residence as well as vehicles located on the property. The search yielded small amounts of marijuana and cocaine, drug paraphernalia, and approximately 750 bags of suspected heroin. The substances were subsequently tested and confirmed.

As a result, in case No. 876, Defendant was charged with PWID – Heroin, Possession of Heroin, Possession of Cocaine, Possession of a Small Amount of Marijuana, two counts of Possession of Drug Paraphernalia, Terroristic Threats, Simple Assault, and Harassment.

The Two Cases Together

In June of 2016, several relevant submissions were filed or served. On June 21, 2016, Defendant filed in case No. 876 an omnibus motion seeking suppression of evidence. At or around the same time, the Commonwealth served on Defendant notices pursuant to Pa.R.E. 404(b) of its intent to introduce at trial "other acts" evidence consisting of "prior bad acts" perpetrated by Defendant. Specifically, the Commonwealth provided notice of its intent to introduce in each of these cases: (a) Defendant's acts and conduct and the crimes charged in the other case ("Cross-Case Evidence"); and (b) Defendant's seven prior convictions in New Jersey for possession or possession with the intent to deliver drugs ("Prior PWID Evidence"). Thereafter, on

4

June 27, 2016, the Commonwealth filed a motion to join these cases for trial.[1] As the basis for its motion, the Commonwealth cited to the proffered 404(b) evidence, claiming that "the evidence of each offense would be admissible at trial for the other, the jury could easily separate the evidence and avoid confusion, and [] Defendant would suffer no undue prejudice." (Commonwealth's Motion for Joinder, filed June 27, 2016, ¶ 6).

In response, we scheduled a hearing for August 11, 2016. During the hearing, we received evidence and heard argument on Defendant's suppression motion. At Defendant's request, and with the tacit concurrence of the Commonwealth, we agreed to hold off deciding the joinder and Rule 404(b) evidence issues until after the suppression motion was decided.

While the joinder and Rule 404(b) evidence matters were not decided at the hearing, they were nonetheless discussed. Among other things, on the joinder issue, the Commonwealth reaffirmed that these cases arose from two separate incidents, that the incidents were investigated by two different police agencies, and that the joinder motion is for the most part predicated on the Commonwealth's assertion that the evidence from each case is admissible in the other case. (N.T., 8/11/2016, p. 16). The Commonwealth also clarified that it was not at the time asking the Court to affirmatively rule on the 404(b) issues. Instead, in response to the Court's questions, the assistant district attorney indicated that, "I didn't file a motion *in limine* as it relates to — I believe that could be taken up as we approach trial or if they're going to file a motion *in limine* to exclude that evidence or challenge that 404(b) notice evidence. I'm

---

[1] It appears that the joinder motion was filed only in and under the caption of case No. 115.

5

not seeking to have the court today rule on the 404(b), just the joinder Your Honor." (N.T., 8/11/2016, p. 5).

In addition, we provided some initial thoughts on the Prior PWID Evidence so that the parties could focus later arguments. Among other things, based on the 404(b) notices and the statements of the parties, we recognized that a portion of the Commonwealth's notices consisted of

> [seven] cases from Passaic County, New Jersey that the Commonwealth's – about which the Commonwealth is seeking to introduce evidence and it lists even evidence of a conviction. So when you're arguing -- someone is going to have to tell me how the Commonwealth gets to put in a prior conviction for PWID in a subsequent PWID case at least in its case-in-chief because that would be a new one on me.

(N.T., 8/11/2016, pp. 6-7).

At the conclusion of the hearing, we issued an order setting a briefing schedule on the suppression issues and establishing an orderly procedure by which to address the 404(b) evidence issues.

On August 26, 2016, Defendant filed objections to the joinder motion and the introduction of the proffered 404(b) evidence. In accordance with the procedure and time frame set forth in our Order, we scheduled a hearing and directed the filing of briefs.

On August 29, 2016, we issued an order denying Defendant's suppression motion in case No. 876. The case was placed on the November 2016 trial term.

On October 27, 2016, a hearing was convened to address the joinder and 404(b) evidence matters. The parties submitted briefs and orally outlined their respective positions.

At the hearing, the Commonwealth stated

> With respect to the other offenses, Your Honor, the Commonwealth is not seeking to introduce those, obviously, as propensity to commit crimes; but it first goes in rebuttal to [Defendant's] assertion that this is personal use and also to his intent, which is an element to the offense of PWID, that he, in fact, was possessing heroin with intent to deliver it.

(N.T. 8/27/2016, p. 10). In its brief, the Commonwealth further alleged that the proffered 404(b) is admissible to show intent, common scheme, knowledge of drug trafficking, and to refute Defendant's anticipated claim of personal use. As previously indicated, the proffered 404(b) evidence is the sole basis for the Commonwealth's motion to join the cases.

In response, Defendant's attorney highlighted the importance of

> receiv[ing] a fair trial that is not painted by unfair prejudice. The Court has noted that when you introduce prior bad acts you come along with a high probability that the jury is going to infer propensity based upon those prior bad acts....Your Honor, the seven prior PWIDs, you have to – we have to view this in a practical manner. The jury is going to hear that, and they are going to say, Well there is obviously no way he doesn't have a propensity to deal in heroin. That's the way it's going to be done. So it comes with a very high risk of unfair prejudice.

(N.T., 8/27/2016, pp. 11-12). Counsel for Defendant went on to question the Commonwealth's need to introduce the prior convictions, point out the substantial other evidence available to the Commonwealth, and assert that a cautionary or limiting instruction would not be enough to remove the taint.

In his brief, Defendant reiterated much of the above argument and also challenged the Commonwealth's assertion that the Cross-Case Evidence and Prior PWID Evidence fit into the asserted 404(b) exceptions. Defendant highlighted the fact

7

that the Commonwealth had not specified how it intended to introduce either form of evidence, specifically whether it sought to admit mere records of conviction or the testimony of investigators involved in the cases. He further claimed that the unfair prejudice associated with the proffered 404(b) evidence would outweigh its probative value. Defendant concluded that introduction of the Cross-Case Evidence and the Prior PWID Evidence would result in a high probability that the jury would convict Defendant based upon propensity, regardless of the other evidence presented at trial.

We took the matter under advisement, but provided a framework for analysis and some food for thought for Defendant and his attorney as they considered the plea offer stated on the record at the beginning of the hearing. Among other things, we pointed out that there might well be a difference between what the Commonwealth could properly admit in the first instance and what it could legitimately present to rebut Defendant's arguments, cross examination, or evidence at trial. (N.T., 10/27/2016, pp. 16-17).

On November 1, 2106, the day of jury selection, the undersigned was assigned to call the final trial list consisting of approximately 99 cases, take pleas, and send cases to jury selection. During the proceeding, case No. 876 and a third case involving Defendant – a separate DUI case docketed to No. 1255 Criminal 2016 – were called. Case No. 115 was not on the list, but all were aware that the joinder motion was pending.

At side bar, the Commonwealth asked us to grant its joinder motion, send the consolidated cases to jury selection, and continue the separate DUI case to the next term. Given the hectic nature of the list call, we initially issued, from side bar, a very

8

quick and short order denying the Commonwealth's joinder motion, and then indicated that the 404(b) evidence issues would be decided at time of jury selection or trial. Accordingly, we announced that case No. 876 would be sent for jury selection and that case No. 1255 would be continued to the next term.

Again at side bar, the Commonwealth pushed for a resolution then and there. At first, we indicated that the 404(b) issues would be addressed on the record at time of jury selection. Upon further urging of the Commonwealth, we amended our order to hold that the Commonwealth would not in its case in chief be permitted to introduce the Prior PWID Evidence. We also indicated that the remaining 404(b) issue – whether introduction of the Cross-Case Evidence would be permitted – would be decided at trial, although for some reason that aspect of our ruling did not get reflected on the record. We advised the parties that, like all pretrial evidentiary rulings based on proffers and arguments of counsel, the ruling was subject to change based on the evidence presented during trial. (N.T., 11/1/2016, pp. 3-4; Order dated November 1, 2016).

In accordance with local practice, the attorneys then went to another courtroom where jury panels were being assigned. At that point, the assistant district attorney informed the judge who was assigning jury panels that the Commonwealth would be appealing the undersigned's ruling. As a result, a jury was not picked.

Our November 1, 2016 ruling was reduced to a written order that was entered on November 3, 2106. Later, while reviewing these cases to determine whether the Commonwealth had filed its appeal, we realized that the order was incomplete.

Accordingly, we vacated the November 1st order and issued a revised order that reflected our full ruling. Specifically, the order provided:

> **AND NOW**, this 15th Day of November, 2016, it appearing that the Order dated November 1, 2016, inadvertently omitted a portion of the Court's ruling and contained an incorrect docket number in the caption, the Order dated November 1, 2016 is VACATED and replaced with the following:
>
> After hearing, it is ORDERED that the Commonwealth's motion for joinder and consolidation of these cases is DENIED.
>
> The Commonwealth will not be permitted to introduce Defendant's prior convictions in its case in chief.
>
> The remainder of the Commonwealth's motion regarding other acts evidence will be decided at time of trial.
>
> Like all pre-trial rulings based on offers of proof that are made before introduction of evidence and arguments of counsel the ruling is subject to modification by the trial judge as events develop during the trial.

(Order dated November 15 and entered November 16, 2016).

The Commonwealth then filed these appeals. In each appeal, the Commonwealth certified, pursuant to Pa. R.A.P. 311(d), that two aspects of our rulings would "substantially handicap" its case. Specifically, the assistant district attorney certified that "the Court Order dated November 1, 2016 [*sic*] denying the Commonwealth's Motion for Joinder and denying the Commonwealth's 404(b) evidence as it related to the Defendant's prior convictions for possession with intent to deliver, will substantially handicap the prosecution of the Defendant in the above-captioned case." (Commonwealth's Notices of Appeal, filed November 18, 2016).

10

## DISCUSSION

In each of these appeals, the Commonwealth raises or attempts to raise three claims of error. In assignments of error one and three, the Commonwealth challenges our determination that it would not be permitted in its case-in-chief to introduce evidence of Defendant's New Jersey PWID convictions and our denial of its joinder motion, both of which are referenced in the Commonwealth's Rule 311(d) certifications. (*See* Commonwealth's Notices of Appeal, filed November 18, 2016, and Commonwealth's Rule 1925(b) Statements, filed December 7, 2016). In its second assignment of error, the Commonwealth attempts to challenge our "failure to rule" on its request to introduce evidence of each of these cases in the trial of the other, an issue that is not included in the Commonwealth's Rule 311(d) certifications. For the reasons that follow, we believe that the Commonwealth's appeals are at least partially defective and that its assignments of error, which we will address in reverse order, are substantively without merit.

1. **The Order Denying the Commonwealth's Motion for Joinder Is Not Appealable Under Rule 311(d) Because the Order is an Interlocutory Order that Neither Terminates nor Substantially Handicaps the Prosecution**

In its third assignment of error, the Commonwealth claims that we abused our discretion in denying its request to join these two cases for trial. However, under well-settled law, the denial of a motion to join is not appealable under Pa.R.A.P. 311(d). *Commonwealth v. Woodard*, 136 A.3d 1003 (Pa. Super. 2016), *app. den.*, ___ A.3d ___, 2016 WL 5947280 (Pa., filed October 13, 2016) (Table). This is because

> an order denying joinder, like an order granting severance,
> is interlocutory and thus not appealable. Here, the
> Commonwealth is free to seek conviction on all counts,

11

> against each defendant, in ... separate trials. Therefore, denial of the motion for joinder does not terminate or substantially handicap the prosecution and is not appealable under Rule 311(d). To expand Rule 311(d) to encompass such interlocutory review would be to disturb the orderly process of litigation. Strict application of the Rule assures that trials will go forward as scheduled.

*Woodward*, 136 A.3d at 1007 (internal quotation marks and citation omitted) (citing *Commonwealth v. Smith*, 544 A.2ds 943 (Pa. 1988) (order granting severance of two criminal informations interlocutory and not appealable because the Commonwealth is free to seek conviction on both counts in separate trials) and *Commonwealth v. Saunders*, 394 A.2d 522 (Pa. 1978) (same)).

Under this clear authority, our denial of the Commonwealth's joinder motion is unappealable. Moreover, as the cited cases teach, the denial neither hampers nor prevents the Commonwealth from trying Defendant. The Commonwealth retains the ability to seek conviction on all counts in separate trials.

In the alternative, our decision to deny joinder was a proper exercise of discretion. The acts giving rise to these two cases happened months apart. The crimes were investigated by two different police agencies and involve different witnesses. While defendant is accused of possessory drug offenses in both cases, he is additionally charged in case No. 876 with Terroristic Threats, Simple Assault, and Harassment in a domestic violence scenario in which a child was present and Defendant is alleged to have brandished a knife. Introduction of evidence regarding the domestic violence, the presence of a child, and the knife in case No. 115, in which only drug trafficking and possession is charged, would be at once irrelevant and overly prejudicial. It is important that the jury have the opportunity to hear and weigh the

12

evidence in case No. 115 without being exposed to the inflammatory domestic violence overlay in case No. 876. Additionally, conspiracy is not charged. Finally, the Commonwealth's sole basis for joinder is that both categories of 404(b) evidence would be admissible in both cases. However, given the considerations just mentioned, the Cross-Case Evidence would be unduly prejudicial if introduced in the Commonwealth's case in chief. Similarly, for the reasons discussed below, the Prior PWID Evidence is not admissible in the Commonwealth's case in chief in either trial. Thus, the asserted basis for joinder is meritless. Under these facts and circumstances, our decision to deny joinder did not constitute an abuse of discretion.

2. **The Commonwealth's Challenge to our Deferred Ruling on the Cross-Case Evidence is Both Defective and Baseless**

In its second assignment of error, the Commonwealth maintains that we erred in "failing to rule" on the Cross-Case Evidence. However, the Commonwealth has failed to properly raise or preserve this claim for review. In the alternative, the claim is baseless.

Pa.R.A.P. 311(d) permits the Commonwealth, under "circumstances provided by law," to take an immediate "appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d). "When the Commonwealth takes an appeal pursuant to Rule 311(d), the notice of appeal *shall include a certification* by counsel that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 904(e) (emphasis added). The Commonwealth's "certification is required as a means of preventing frivolous appeals and appeals intended solely for delay." *Commonwealth v. Brister*, 16 A.3d 530, 533-34 (Pa. Super.

13

2011) (citations omitted). Thus, the Commonwealth's failure to include the certification is a fatal defect which renders the order unappealable. *Brister; Commonwealth v. Knoeppel,* 788 A.2d 404, 407 (Pa. Super. 2001). *See also Commonwealth v. Malinowski,* 671 A.2d 674 (Pa. 1996); *Commonwealth v. Dugger,* 486 A.2d 382 (Pa. 1985).

In its Rule 311(d) certifications in these cases, the Commonwealth did not even tacitly reference our decision to defer ruling on the Cross-Case Evidence issue. On the contrary, the Commonwealth was very specific that it was certifying *only* our ruling on the Prior PWID Evidence. In this regard, the certifications stated that, "the Court Order ... denying the Commonwealth's 404(b) evidence *as it related to the Defendant's prior convictions for possession with intent to deliver,* will substantially handicap the prosecution of the Defendant in the above-captioned case." (Commonwealth's Notices of Appeal, filed November 18, 2016) (emphasis added). Under the authority cited above, the Commonwealth's failure to certify the Cross-Case Evidence issue is fatal.

Additionally, and along similar lines, the Commonwealth has waived its second assignment of error. Although not completely clear, it appears the Commonwealth is attempting to assert that our decision to defer ruling and not decide the Cross-Case Evidence issue before trial constituted error. The basis for this assertion appears to be Pa. R. Crim. P. 580, which provides that, "[u]nless otherwise provided in these rules, all pretrial motions shall be determined before trial. Trial shall be postponed by the court for the determination of pretrial motions, if necessary." However, the Commonwealth did not at the time we deferred our decision object to our "failure" to

14

issue a definitive ruling prior to trial. Accordingly, the Commonwealth has waived the issue on appeal. Pa. R.A.P. 302(b); see also *Commonwealth v. Little*, 903 A.2d 1269, 1272 (Pa. Super. 2006); *Commonwealth v. Brotherson*, 888 A.2d 901, 905 (Pa. Super. 2005); *Commonwealth v. Berry*, 877 A.2d 479, 485 (Pa. Super. 2005); *Commonwealth v. Fairley*, 444 A.2d 748, 752 (Pa. Super. 1982).

Alternatively, the Commonwealth's challenge to our decision to defer ruling on the Cross-Case Evidence is substantively devoid of merit. The filing that prompted the ruling was Defendant's pretrial objection to the Commonwealth's notice of intent to introduce the Cross-Case Evidence – a filing that is in the nature of a *motion in limine*. Although such objections and motions are "generally made before trial, the trial court may elect to rule upon the application at a later time." *Commonwealth v. Metier*, 634 A.2d 228, 232 n. 3 (Pa. Super. 1993). In this case, we made the discretionary election to defer ruling until time of trial so that, before inflammatory evidence would be presented to the jury, we would have the opportunity to make our evidentiary ruling in full context based not on overgeneralized pretrial proffers, but, rather, on the content of the opening statements, the attorneys' questioning of witnesses, and the totality of other evidence presented up until the specific point at which the Cross-Case Evidence is offered.

Deferral should not have been a surprise since, during the omnibus hearing, the Commonwealth specifically informed the Court that it was *not* at the time seeking an affirmative, advance ruling that its proffered Cross-Case Evidence was admissible. Instead, the Commonwealth indicated that the issue "could be taken up as we approach trial or if they're [Defendant] going to file a motion *in limine* to exclude that

15

evidence or challenge that 404(b) notice." (N.T., 8/11/2016, p. 5). Similarly, at several points we advised that admissibility of either category of 404(b) evidence might depend upon, or that any pretrial ruling might be subject to change based on, the actual evidence, arguments, and questions at trial.

In an attempt to bolster or add to its claim, the Commonwealth appears to take a stab at challenging the portions of our orders which advised that, "[l]ike all pre-trial rulings based on offers of proof that are made before introduction of evidence and arguments of counsel the ruling is subject to modification by the trial judge as events develop during the trial." (Order, dated November 15 and entered November 16, 2016). However, that caution, which we routinely include in pretrial opinions or orders ruling on 404(b) evidence issues, motions *in limine*, and related matters, is based on *Commonwealth v. Hicks*, 91 A.3d 47 (Pa. 2014), in which our Supreme Court stated:

> Pre-trial resolution of evidentiary matters generally increases the efficiency of the trial process, but the balancing tests under Rule 403 and Rule 404(b) do not present a purely legal question. Probative value and prejudice are conjoined in the sense that if evidence is probative at all, it is necessarily prejudicial to one side or the other—if evidence has no probative value, it ought not be admitted in the first place, and this can usually be determined before trial. The balancing inquiry, however, is a fact-and context-specific one that is normally dependent on the evidence actually presented at trial. The value of evidence is obviously a fluid notion, and the prejudicial effect of the evidence is likewise in flux as matters progress. Clearly, a deferred, correct decision is better than an early, incorrect one.
>
> Although we hold the balancing of probative value and prejudice is normally better left for trial, we do not intend to preclude all such pre-trial determinations. A court may properly exclude—pre-trial—evidence under the balancing test that, while relevant, carries an unusually high likelihood of causing unfair prejudice and minimal

16

probative value regardless of the evidence ultimately presented at trial. There may also be cases where the pre-trial record is sufficiently developed and the evidence to be presented is sufficiently certain to allow the trial court to intelligently and accurately balance the interests involved. However, these scenarios are exceptions rather than the rule and, as this case demonstrates, are exceedingly unlikely to apply to assessments of the cumulative nature of potential testimony; thus, we caution against pre-trial Rule 403/404(b) balancing assessments unless the trial court finds it manifestly appropriate. [9]

---

[9] A pre-trial ruling on admissibility may help define the issues and the potential evidence, but the court retains the discretion to modify its ruling as circumstances develop or as the evidence at trial diverges from that which was anticipated.

---

*Id.* at 53-54.

Here, we discern no error in either the cautionary language of our orders or our non-prejudicial decision to defer ruling on the Cross-Case Evidence, both of which were based on the holding and rationale of our Supreme Court in *Hicks*.

### 3. We Properly Ruled that the Prior PWID Evidence was Not Admissible in the Commonwealth's Case in Chief

In its first assignment of error, the Commonwealth contends that we erred in ruling that it would not be permitted to introduce the Prior PWID Evidence in its case in chief. This contention is bootless.

In determining the admissibility of evidence, a trial court must decide whether the evidence is relevant and, if so, whether its probative value outweighs its prejudicial effect. *Commonwealth v. Serge*, 837 A.2d 1255, 1260 (Pa. Super. 2003). Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact

17

in issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. *Id.*

Evidence of "prior bad acts" or "other acts" is generally not admissible if offered merely to show bad character or propensity for committing bad acts. Pa.R.E. 404(b)(1); *Commonwealth v. Wattley*, 880 A.2d 682, 686 (Pa. Super. 2005), *appeal dismissed as improvidently granted*, 924 A.2d 1203 (Pa. 2007); *Commonwealth v. Barger*, 743 A.2d 477, 480 (Pa. Super. 1999) (*en banc*). The purpose of this rule is

> to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to *preclude the inference that because he has committed other crimes he was more likely to commit that crime for which he is being tried.* The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence.

*Commonwealth v. Kinard*, 95 A.3d 279 (Pa. Super. 2014) (citing *Commonwealth v. Spruill*, 391 A.2d 1048 (Pa. 1978)).

However, even where there is some prejudicial impact, evidence of other crimes, wrongs, or bad acts may be admitted where there is a legitimate evidentiary purpose, its probative value outweighs the prejudicial effect likely to result from its admission, and an appropriate limiting instruction is given. *Commonwealth v. Paddy*, 800 A.2d 294, 307 (Pa. 2002). Specifically, "evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Pa.R.E. 404(b)(2). Moreover, Pa.R.E. 404(b) does not distinguish between prior and subsequent acts and is not limited to crimes proved beyond a reasonable doubt in court, but also includes other crimes, wrongs, and bad acts, even if they lack definitive

18

proof. *Wattley, supra,* 880 A.2d at 683; *Commonwealth v. Ardinger,* 839 A.2d 1143, 1145 (Pa. Super. 2003) (internal citation omitted).

In order for evidence of prior crimes to be admissible to show intent, "the evidence must give sufficient ground to believe that the crime currently being considered *grew out of or was in any way caused by the prior set of facts and circumstances.*" *Commonwealth v. Aguado,* 760 A.2d 1181, 1186 (Pa. Super. 2000) (*en banc*) (quoting *Commonwealth v. Camperson,* 612 A.2d 482, 484 (1992) (emphasis in original)). "There must be a logical connection between the prior incident and the crime for which the accused is being tried. Important factors to be considered in making this determination include the proximity in time between the incidents; the similarity in the circumstances surrounding the incidents; and whether evidence of the prior crime is necessary to rebut the accused's evidence or contention of accident, mistake or lack of required intent. *Commonwealth v. Camperson,* 612 A.2d 482, 483-84 (Pa. Super. 1992) (citations, quotations, and quotation marks omitted).

A common plan or scheme justifies admission where "two or more crimes [are] so related to each other that proof of one tends to prove the others or establish the identity of the person charged with the commission of the crime at trial...In other words[,] where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other." *Commonwealth v. Fortune,* 346 A. 2d 783 (Pa. 1975). *See also Commonwealth v. Miller,* 644 A.2d 1310 (Pa. 1995) (requiring a "logical connection" between the crimes); *Commonwealth v. Elliott,* 700 A.2d 1243, 1249 (Pa. 1997) (internal citations omitted), *abrogated on other grounds by Commonwealth v. Freeman,* 827 A.2d 385 (Pa. 2003).

19

Similarities cannot be confined to insignificant details that would likely be common elements regardless of the individual committing the crime. *See Commonwealth v. Hughes*, 555 A.2d 1264, 1283 (Pa. 1989) (internal citations omitted). Evidence of a common scheme can establish any element of a crime, such as identity and mental state, so long as the scheme is not being used just to establish a propensity of the defendant to commit crimes. *See Commonwealth v. Miller*, 664 A.2d 1310, 1318 (Pa. 1995), *abrogated on other grounds by Commonwealth v. Hanible*, 836 A.2d 36 (Pa. 2003). In determining if other incidents show a common plan or scheme, the Court should focus not just on a defendant's actions, but on the factual circumstances of the incidents in their entirety. *See Commonwealth v. O'Brien*, 836 A.2d 966, 970-71 (Pa. Super. 2003) (internal citations omitted). Stated otherwise, the similarities of the incidents need not lay solely in the perpetrator's acts, but in the shared similarities in the details of each crime. *See Commonwealth v. Newman*, 598 A.2d 275, 278 (Pa. 1991).

The list referenced in Rule 404(b)(2), from which the Commonwealth has selected two exceptions, is not exhaustive. In addition to the enumerated purposes, our appellate courts have long recognized a *res gestae* exception that allows admission of other bad acts when relevant to furnish the context or complete the story of the events surrounding a crime, or where the particular crime or act was part of a chain, sequence, or natural development of events forming the history of a case. *See Commonwealth v. Dillon*, 863 A.2d at 601[2]; *Wattley*, 880 A.2d at 687; *Commonwealth v. Page*, 965 A.2d 1212, 1221 (Pa. Super. 2009); *Commonwealth v. Passmore*, 857

---

[2] The *res gestae* exception is discussed in both the Superior Court's *en banc* opinion and the Supreme Court's affirming opinion.

20

A.2d 697, 711 (Pa. Super. 2004). As our Superior Court has noted, trial courts are not "required to sanitize the trial to eliminate all unpleasant facts from ... consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." *Paddy, supra,* 800 A.2d at 308.

Even when evidence is offered for one of these purposes, the trial court must still balance the need for the other crimes evidence in light of its convincingness and of all the prosecution's other evidence against its potential prejudice to the accused. *See Commonwealth v. Ulatoski,* 371 A.2d 186, 191 n.11 (Pa. 1977); *Commonwealth v. Wright,* 393 A.2d at 836; *Commonwealth v. Hude,* 390 A.2d 183, 186 (Pa. Super. 1978). Relevant evidence may be excluded "if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury." *Serge, supra,* 837 A.2d at 1260. "Whether relevant evidence is unduly prejudicial is a function in part of the degree to which it is necessary to prove the case of the opposing party." *Commonwealth v. Gordon,* 673 A.2d 866, 870 (Pa. 1996) (finding other acts evidence admissible as necessary part of the Commonwealth's case where a jury could find reasonable doubt without it). *See also Commonwealth v. Obrien, supra.* Other considerations to be factored into the balancing test include the strength of the "other crimes" evidence, the similarities between the crimes, the time lapse between crimes, the efficacy of alternative proof of the charged crime, and "the degree to which the evidence probably will rouse the jury to overmastering hostility. McCormick, Evidence § 190 at 811 (4th ed. 1992). *See also Commonwealth v. Frank,* 577 A.2d 609 (Pa.

21

Super. 1990) (enumerating and discussing balancing test factors, including ability for limiting instruction to reduce prejudice).

In this case, the Commonwealth attempts to fit the Prior PWID Evidence into the intent and common plan or scheme exceptions, and additionally maintains that the evidence is admissible to demonstrate Defendant's knowledge of drug trafficking and to rebut Defendant's anticipated claim of personal use. However, despite several hearings and the opportunity to submit briefs, the Commonwealth has not identified a single Pennsylvania case in which a prior PWID conviction was admissible under the cited exceptions in the prosecution's case in chief in a subsequent PWID prosecution or to show "knowledge." As discussed above, exceptions to the rule precluding evidence of prior criminal acts are narrow. They apply only "where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other." *Aguado*, 760 A.2d at 1186 (quoting *Commonwealth v. Morris*, 425 A.2d 715, 720 (1981)). Here, the required connections are not present. Simply, the Commonwealth's attempts to invoke exceptions are not supported by either the limited proffer it made or the law summarized above.

*Aguado* illustrates both the narrowness of the intent exception and the Commonwealth's failure to establish any other cognizable basis for admission in its case in chief of the Cross-Case Evidence or the Prior PWID evidence. In *Aguado*, the defendant was charged with PWID. Nine months earlier, he had been charged with PWID for acts occurring in the same neighborhood in which his current charges arose. The defendant filed a motion *in limine* seeking to preclude the Commonwealth from

22

introducing evidence of his prior PWID conviction. The motion was discussed on the second day of trial. The trial court agreed that the prior conviction could not be used as propensity evidence. The Commonwealth indicated that it would not use the prior conviction in its case in chief. The trial court then deferred ruling on the Commonwealth's use of the prior conviction as rebuttal evidence until such time as the defendant's defense became clear.

The issue was discussed again immediately before the defendant was to testify. At that time, the trial court reiterated that it would defer ruling on the admissibility of the prior conviction as rebuttal evidence, and that such ruling would be based on the defendant's testimony. However, the trial court went further and stated its predisposition to admit the defendant's prior conviction as evidence of intent. Thereafter, the defendant chose not to testify on his own behalf. He was ultimately convicted of PWID.

On appeal, the defendant argued that the trial court's statement constituted error, and this error caused him to forego his constitutional right to testify on his own behalf. The Superior Court agreed and reversed, finding that the effect of the trial court's deferral of its evidentiary ruling, coupled with the disclosure of its predisposition, did, in fact, cause the defendant not to testify.

In the course of its opinion, the Superior Court defined the intent exception as follows:

> In order for evidence of prior crimes to be admissible to show intent, "the evidence must give sufficient ground to believe that the crime currently being considered *grew out of or was in any way caused by the prior set of facts and circumstances*." Commonwealth v. Camperson, 417 Pa. Super. 280, 612 A.2d 482, 484 (1992) (emphasis

23

added). In this case, the Commonwealth presented no evidence that Aguado's conviction "grew out of or was in any way caused by" his prior drug activity. Moreover, we cannot conclude that Aguado could form and maintain his "intent" over the nine-month period between the two incidents.

*Aguado*, 760 A.2d at 1186-87 (emphasis in original).

Here, as in *Aguado*, the Commonwealth has not demonstrated that the instant charges "grew out of or [were] in any way caused by" Defendant's PWID convictions in New Jersey in 2005 and 2010. Also as in *Aguado*, we cannot conclude that Defendant could form and maintain his "intent" over the extended period of time between the New Jersey convictions and either of these cases.

Similarly, regarding the common plan or scheme exception, the Commonwealth did not come close to demonstrating that the New Jersey drug crimes and the crimes charged in this case are so related to each other that proof of one tends to either prove the other or establish the identity of the person charged. The required connection is missing.

We recognize that Pennsylvania Courts have on occasion admitted prior conviction evidence in a subsequent prosecution for the same crime, most notably in the prosecution of sexual offenses. However, the so-called "lustful disposition" exception is limited to sexual offenses involving the same victim and [where] the two acts are sufficiently connected to suggest a continuing course of conduct. *See Commonwealth v. Wattley, supra; Commonwealth v. Knowles*, 637 A.2d 331 (Pa. Super. 1994). This exception is due, in large measure, to the fact that such cases often "have a pronounced dearth of independent eyewitnesses, and there is rarely any accompanying physical evidence. *Commonwealth v. Paddy*, 800 A.2d 294 (Pa. 2002).

24

Here, Defendant is charged with possessory drug crimes and a domestic assault, not sexual offenses. Further, the Commonwealth has substantial traditional and independent evidence of guilt beyond the Prior PWID Evidence (and the Cross-Case Evidence). Additionally, the Commonwealth has not demonstrated the requisite connection between prior New Jersey convictions and the crimes charged in these cases. Under these circumstances, no version of the lustful disposition exception or the somewhat related *res gestae* exception even potentially applies.

In short, based on the record established to date, the Commonwealth has failed to establish any legitimate purpose or any exception or other cognizable basis for admission in its case in chief of the Prior PWID Evidence.

Additionally, and even more significantly, the prejudicial effect of the Prior PWID Evidence, if admitted during the Commonwealth's case in chief, would unduly outweigh its probative value. The potential prejudice of admitting the Prior PWID Evidence is obvious and palpable. *Aguado, supra.* "Evidence of prior criminal activity is probably only equaled by a confession in its prejudicial impact upon a jury." *Id.* at 1187 (quoting *Spruill, supra,* 391 A.2d at 1050). In this case we conducted the requisite balancing test based on the record presented to date and found that the Prior PWID Evidence carries an unusually high likelihood of causing prejudice and minimal probative value.

In summary, the Commonwealth has little need for the Prior PWID Evidence. It has ample other evidence. In both cases, the Commonwealth has the observations and testimony of police officers, physical evidence and money recovered by the police, lab testing of the controlled substances, Defendant's statements and clean drug test,

25

traditional evidence of intent to deliver such as the amounts and types of drugs at issue, the substantial number of packets and the types of packaging, the amount and denominations of cash recovered, and the locations in which the drugs were found, and the ability, as it routinely does, to call an expert witnesses. In case No. 876, the Commonwealth additionally has the statements and testimony of Defendant's former girlfriend and her son. Further, there are no temporal, geographic, economic, criminogenic or other connections, logical or not, between the New Jersey convictions and the instant possessory drug offenses. Moreover, the Prior PWID Evidence is classic propensity evidence and the domestic violence-based crimes charged in case No. 876 are completely unrelated to either the prior New Jersey convictions or the offenses charged in case No. 115. Thus, admitting evidence of seven prior drug trafficking crimes, several of which apparently occurred in school zones, could certainly lead the jury in each of these cases to convict Defendant of possessory drug offenses because of his "propensity" to sell drugs, and might lead a jury to convict on the domestic violence-related charges because of his prior record. Simply, the probative value of and the Commonwealth's need for the Prior PWID Evidence pales in comparison to the potential for unfair prejudice to Defendant if the evidence is admitted in the Commonwealth's case in chief.

In its brief and oral arguments to this Court, the Commonwealth opined that it needed the proffered evidence to anticipatorily "rebut" the defense of personal use that it expects Defendant will raise. However, rebuttal does not typically occur pretrial. Until trial, we will not know whether Defendant will raise a personal use defense. Similarly, we will not know whether the statements and arguments of counsel, the presentation

26

of evidence, the questioning of witnesses, or anything else that transpires at trial might "open the door" for admission of the Prior PWID Evidence or other 404(b) evidence. If the proverbial door is opened, our ruling and the attendant balancing test may be revisited, if necessary, based on the actual evidence submitted and arguments made by the parties.

For these reasons, we believe that the challenged orders should be affirmed.

**BY THE COURT:**

Date: 1/24/2017

JONATHAN MARK,                    J.

Cc:    Superior Court of Pennsylvania
Jonathan Mark, J.
Public Defender (EC)
District Attorney (CS)

27