COMMONWEALTH of Pennsylvania, Appellee,

v.

Jason AGUADO, Appellant.

Superior Court of Pennsylvania.

Argued April 17, 2000.

Filed Oct. 6, 2000.

---

Michael G. Paul, Philadelphia, for appellant.

Michael Gehring, Asst. Dist. Atty., Philadelphia, for Commonwealth., appellee.

BEFORE: McEWEN, President Judge, DEL SOLE, HUDOCK, EAKIN, JOYCE, STEVENS, MUSMANNO, ORIE MELVIN, and TODD, JJ.

MUSMANNO, J.:

¶ 1 Jason Aguado ("Aguado") appeals from the judgment of sentence imposed following his conviction of possession of cocaine with intent to deliver.[1] We vacate the judgment of sentence and remand for a new trial.

¶ 2 On August 7, 1996, at approximately 7:50 p.m., Philadelphia Police Officers Scott Forstater and Joseph McCook were on routine patrol in a marked police wagon in the area of the 1800 block of Hart Lane. N.T., 7/30/97, at 30–32. As he was travelling on Hart Lane, Officer Forstater observed Aguado standing on the northwest corner of Ruth Street and Hart Lane. *Id.* at 34. As Officer Forstater watched, Aguado received United States currency from a white male. *Id.* Aguado then removed some small, light-colored objects from a brown paper bag, which he was holding, and handed them to the white male. *Id.* As the officers drove into the intersection, Aguado looked in their direction and then tossed the paper bag on the sidewalk. *Id.*

¶ 3 The officers exited their vehicle and approached Aguado. *Id.* Officer Forstater stopped Aguado, and, at Officer Forstater's direction, Officer McCook retrieved the paper bag from the ground. *Id.* The bag contained ten clear plastic vials containing a white chunky substance, which was later determined to be less than two grams of crack cocaine. *Id.* at 34–35; N.T., 7/31/97, at 24, 47. The officers arrested Aguado and seized $93.00 from his person. *Id.* at 144.

¶ 4 A jury convicted Aguado of possession of cocaine with intent to deliver.

---

1. 35 P.S. § 780–113(a)(30).

Thereafter, the trial court sentenced Aguado to a prison term of 11½ to 23 months in the county jail, to be followed by a probation term of 60 months. Aguado then filed the instant timely appeal.

¶ 5 Aguado raises the following claims for our review: (1) the verdict was contrary to the weight and sufficiency of the evidence;[2] (2) the trial court erred in failing to grant Aguado's Motion *in limine*, in which he sought the exclusion of evidence of his prior conviction for possession of cocaine with the intent to deliver; (3) trial counsel was ineffective for failing to seek the suppression of certain evidence, failing to properly investigate the case, and for failing to communicate with Aguado regarding trial options; (4) the Commonwealth committed prosecutorial misconduct; and (5) Aguado's sentence was excessive.[3]

¶ 6 Aguado first claims that the verdict was against the weight of the evidence. According to Aguado, the police officers' version of events was not credible. In support of this contention, Aguado points out the fact that the arresting officers were unable to find the white male to whom he allegedly had delivered cocaine.

 ¶ 7 The decision to grant a new trial based on a challenge to the weight of the evidence rests within the discretion of the trial court. *Commonwealth v. Brown*, 538 Pa. 410, 436, 648 A.2d 1177, 1189 (1994). "Appellate review, therefore, is a review of the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence." *Id.* "Whereas a trial court's decision to grant or deny a new trial is aided by an on-the-scene evaluation of the evidence, an appellate court's review rests solely upon a cold record." *Id.* at 436, 648 A.2d at 1190.

 ¶ 8 Because of this disparity in vantage points, an appellate court may not merely substitute its opinion concerning the weight of the evidence for that of the trial court. Instead, the appellate court must assess whether the trial court has palpably abused its discretion. In making this assessment, we must examine the entire record to ascertain whether the trial judge's reasons and factual basis can be supported. *Id.* "[When] the record adequately supports the trial court, the trial court has acted within the limits of its judicial discretion." *Id.* at 436–37, 648 A.2d at 1190.

 ¶ 9 In his meager argument, Aguado challenges the jury's credibility determinations. The jury, however, is free to believe all, part, or none of the evidence presented. *Commonwealth v. Griscavage*, 512 Pa. 540, 546, 517 A.2d 1256, 1259 (1986). Because the evidence, as set forth above, adequately supports the trial court's determination, we discern no abuse of discretion by the trial court in concluding that the verdict is not against weight of the evidence. *See Commonwealth v. Ragan*, 439 Pa.Super. 337, 653 A.2d 1286, 1287 (1995) (holding that the Superior Court is not free to answer the underlying question of whether we believe that the verdict was against the weight of the evidence).

 ¶ 10 In his Brief, Aguado also claims that the evidence was insufficient to sustain his conviction of possession of cocaine with intent to deliver. According to Aguado, the Commonwealth failed to establish that he actually delivered narcotics to the white male.

 ¶ 11 The test for determining the sufficiency of the evidence is whether,

---

**2.** In his "Statement of the Questions Involved," Aguado contends that the verdict was against the weight of the evidence. However, in the Argument portion of his brief, Aguado challenges both the weight and sufficiency of the evidence. In the interest of judicial economy and to forestall a future claim of ineffective assistance of counsel, we will address both claims.

**3.** We note that Aguado's issues were renumbered for the sake of effective appellate review.

viewing the evidence in the light most favorable to the Commonwealth as the verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could have determined that all of the elements of the crime have been established beyond a reasonable doubt. *Commonwealth v. Hagan*, 539 Pa. 609, 613, 654 A.2d 541, 543 (1995). "[T]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Harper*, 485 Pa. 572, 576, 403 A.2d 536, 538 (1979). The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the jury unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Seibert*, 424 Pa.Super. 242, 622 A.2d 361, 363 (1993).

¶ 12 In order to uphold a conviction for possession of narcotics with the intent to deliver, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance and did so with the intent to deliver it. *Commonwealth v. Harper*, 416 Pa.Super. 608, 611 A.2d 1211 (1992). The intent to deliver may be inferred from an examination of the facts and circumstances surrounding the case. *Id.* at 1217. Factors which may be relevant in establishing that drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant. *Commonwealth v. Sherrell*, 414 Pa.Super. 477, 607 A.2d 767 (1992).

¶ 13 Keeping in mind our standard of review, we conclude that the evidence was sufficient to sustain Aguado's conviction. The Commonwealth presented evidence that Officer Forstater witnessed Aguado

accept cash from an unidentified white male, in exchange for a number of small, light colored objects that Aguado retrieved from a brown paper bag. N.T., 7/30/97, at 34. Officer Forstater observed Aguado discard that paper bag upon the officers' approach. *Id.* Subsequent investigation revealed that the paper bag contained ten individual vials containing crack cocaine, and that Aguado possessed $93.00 in cash. *Id.* at 34–35; N.T., 7/31/97, at 24, 47, 144. This evidence was sufficient to establish that Aguado possessed cocaine with intent to deliver. *See Commonwealth v. Torres*, 421 Pa.Super. 233, 617 A.2d 812 (1992) (holding that evidence of individually wrapped bags of cocaine and the lack of paraphernalia for consumption of crack cocaine gave rise to an inference of intent to deliver); *Commonwealth v. Ramos*, 392 Pa.Super. 583, 573 A.2d 1027, 1033–34 (1990) (holding that the defendant's possession of nine individually prepackaged rocks of crack cocaine coupled with defendant's act of placing the drugs beneath a parked car was sufficient evidence of an intent to deliver).

¶ 14 Aguado next claims that the trial court erred in failing to grant his Motion *in limine*. Aguado previously had been convicted of possession of cocaine with the intent to deliver in the vicinity of 1817 Hart Lane.[4] The prior conviction resulted from an incident that took place nine months earlier, in the same neighborhood. Aguado filed a Motion *in limine* seeking to preclude the admission of evidence related to this prior conviction.

¶ 15 The record reveals that the parties discussed Aguado's Motion prior to the start of the second day of Aguado's trial. N.T., 7/31/97, at 2–8. At that time, Aguado argued: (1) his prior conviction could not be admitted in the Commonwealth's case-in-chief to show his bad character or his propensity to commit criminal acts; (2)

---

4. A copy of the Motion *in limine* does not appear in the record. Therefore, our review of the Motion and the particular facts relating thereto is limited to statements made during argument concerning the Motion.

the prior conviction for drug trafficking could not be admitted to impeach his credibility should he take the stand; and (3) his prior conviction could not be admitted to show his intent to sell drugs.

¶ 16 The trial court agreed that the conviction could not be used simply to demonstrate Aguado's bad character or his propensity to commit crimes and that the conviction, since it was not a *crimen falsi*, could not be used to impeach Aguado's credibility. N.T., 7/31/97, at 4. In addition, the Commonwealth indicated that it would not offer evidence of Aguado's prior conviction in its case-in-chief. *Id.* at 3. However, the trial court deferred ruling on the Commonwealth's use of the prior conviction as rebuttal evidence until such time as Aguado's defense became clear. *Id.* at 3–8.

¶ 17 The parties again discussed the Motion *in limine* immediately before Aguado was to testify. *Id.* at 131–39. At that time, the trial court reiterated that it would defer ruling on the admissibility of the prior conviction as rebuttal evidence, and that such ruling would be based on Aguado's testimony. *Id.* at 132–36. However, at that time the trial court stated its predisposition to admit Aguado's prior conviction as evidence of intent. *Id.* at 33. According to Aguado, the trial court's statement constituted error, and this error caused Aguado to forego his constitutional right to testify on his own behalf. We agree.

¶ 18 In determining whether evidence of prior criminal activity is admissible at trial, the trial court must balance the probative value of such evidence against its prejudicial impact. *Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491 (1988). Evidence of a defendant's distinct, unrelated crimes is generally not admissible solely to show a defendant's bad character or his propensity for committing criminal acts. *Id.*

¶ 19 In *Commonwealth v. Spruill*, 480 Pa. 601, 391 A.2d 1048 (1978), our Supreme Court explained the reason for this rule:

> The purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence[.]

*Id.* at 604–05, 391 A.2d at 1049–50 (quotations and citations omitted).

¶ 20 Pennsylvania courts have recognized narrow exceptions to the rule excluding prior criminal acts as evidence. Evidence of a prior crime is admissible if it tends to prove (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan embracing the commission of crimes so related to each other that proof of one tends to establish the other, or (5) the identity of the person charged with the commission of the crime on trial: "in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other." *Commonwealth v. Morris*, 493 Pa. 164, 175, 425 A.2d 715, 720 (1981).

¶ 21 Here, the trial court indicated that Aguado's prior criminal conduct could be admissible to establish the element of intent. In order for evidence of prior crimes to be admissible to show intent, "the evidence must give sufficient ground to believe that the crime currently being considered *grew out of or was in any way caused by the prior set of facts and circumstances*." *Commonwealth v. Camperson*, 417 Pa.Super. 280, 612 A.2d 482, 484 (1992) (emphasis added). In this case, the Commonwealth presented no evidence that Aguado's conviction "grew out of or was in

any way caused by" his prior drug activity. Moreover, we cannot conclude that Aguado could form and maintain his "intent" over the nine-month period between the two incidents.

¶ 22 We also note that the trial court never weighed the Commonwealth's need for the evidence against its potential prejudicial effect. *See Commonwealth v. Steele*, 408 Pa.Super. 128, 596 A.2d 225, 227 (1991) (holding that even where evidence of prior criminal conduct is within one of the enumerated exceptions to the prohibition against prior crimes evidence, the trial court must balance the Commonwealth's need for the evidence against its potential prejudice). Although Aguado had not yet testified when the trial court stated its predisposition, his defense was clear.

¶ 23 Aguado claimed that he was arrested simply because he was proximate to the drugs. Thus, the parties disputed the element of *possession*, not intent, and the Commonwealth's need for the prior crimes evidence in order to establish "intent" was nonexistent. Contrary to the trial court's statement, evidence of Aguado's prior drug transaction, which occurred nine months earlier, was not necessary to rebut his defense.

¶ 24 The potential prejudice of admitting evidence of Aguado's prior conviction for cocaine trafficking, which occurred in the same area as the current crime, is palpable. "Evidence of prior criminal activity is probably only equaled by a confession in its prejudicial impact upon a jury." *Spruill*, 480 Pa. at 606, 391 A.2d at 1050. Based on the evidence of Aguado's prior drug trafficking activity, the jury certainly could have been persuaded to convict Aguado because of his "propensity" for selling drugs.

¶ 25 The effect of the trial court's deferral of its evidentiary ruling, coupled with the disclosure of its predisposition,

caused Aguado to forego his constitutional right to testify on his own behalf. "The right of an accused to testify on his own behalf is a fundamental tenet of American jurisprudence and is explicitly guaranteed by Article I, Section 9 of the Pennsylvania Constitution." *Commonwealth v. Nieves*, 560 Pa. 529, 534–35, 746 A.2d 1102, 1105 (2000). *See also* U.S. Const. Amend. VI (guaranteeing the right of an accused to testify on his own behalf). Accordingly, we are constrained to vacate the judgment of sentence, and remand this matter for a new trial.[5]

¶ 26 Judgment of sentence vacated; case remanded for a new trial. Jurisdiction relinquished.

¶ 27 STEVENS, J. files a Concurring and Dissenting Opinion in which HUDOCK, EAKIN, JOYCE, JJ. join.

STEVENS, J., concurring and dissenting:

¶ 1 I concur with the Majority's conclusions that the verdict was not against the weight of the evidence and that the evidence was sufficient to convict Aguado of possession with the intent to deliver. However, I dissent from the Majority's conclusion that the trial court erred in failing to grant Aguado's motion *in limine*, in which Aguado sought to exclude evidence of his prior conviction for possession with the intent to deliver, and, therefore, I would affirm.

¶ 2 The law applicable to the trial court's ruling on Aguado's motion *in limine* was set forth by this Court in *Commonwealth v. Camperson*, 417 Pa.Super. 280, 612 A.2d 482, (1992), as follows:

> Evidence of a defendant's distinct crimes are not generally admissible against a defendant solely to show his bad character or his propensity for committing criminal acts, as proof of the commission of one offense is not gener-

---

5. Because we remand for a new trial, we need not address Aguado's remaining claims of error, which challenge the effectiveness of trial counsel, the prosecutor's conduct during trial, evidentiary rulings and Aguado's sentence.

ally proof of the commission of another. However, this general proscription against admission of a defendant's distinct criminal acts is subject to numerous exceptions where special circumstances exist which render such evidence relevant for some legitimate evidentiary reason and not merely to prejudice the defendant by showing him to be a person of bad character. Some of the exceptions that this Court has recognized in the past as legitimate bases for admitting evidence of a defendant's distinct crimes include (but are not limited to): (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one naturally tends to prove the others; (5) to establish the identity of the person charged with the commission of the crime on trial where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other; (6) to impeach the credibility of a defendant who testifies in his trial; (7) situations where defendant's prior criminal history had been used by him to threaten or intimidate the victim; (8) situations where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development (sometimes called "res gestae" exception).

\* \* \*

To be admissible to show intent or motive, the evidence must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances. There must be a logical connection between the prior incident and the crime for which the accused is being tried. Important factors to be considered in making this determination include the proximity in time between the incidents; the similarity in the circumstances surrounding the incidents; and whether evidence of the prior crime is necessary to rebut the accused's evidence or contention of accident, mistake or lack of required intent. However, even where evidence of prior criminal conduct is within one of the above exceptions, the trial court must balance the need for the evidence against its potential prejudice in order to determine its admissibility.

*Camperson*, 612 A.2d at 483–484 (citations, quotations, and quotation marks omitted).

¶ 3 Presently, as the Majority indicated, the parties discussed Aguado's motion *in limine* prior to the start of the second day of Aguado's trial. N.T. 7/31/97 at 2–8. Aguado argued: (1) his prior conviction could not be admitted in the Commonwealth's case-in-chief to show his bad character or his propensity to commit criminal acts; (2) the prior conviction for drug trafficking could not be admitted to impeach his credibility should he take the stand; and (3) his prior conviction could not be admitted to show his intent to sell drugs.

¶ 4 The trial court agreed that the conviction could not be used simply to demonstrate Aguado's bad character or his propensity to commit crimes and that the conviction, since it was not a *crimen falsi,* could not be used to impeach Aguado's credibility. N.T. 7/31/97 at 4. The Commonwealth also indicated that it would not offer evidence of Aguado's prior conviction in its case-in-chief. N.T. 7/31/97 at 3. However, the court indicated that it would not rule on Aguado's claim that the prior conviction was not admissible to rebut Aguado's testimony, until such time as Aguado's defense was clear. N.T. 7/31/97 at 3–8. In other words, the trial court believed that the admissibility of Aguado's prior conviction was dependent upon the similarity of Aguado's prior conviction to the facts of this case.

¶ 5 The parties again discussed the motion *in limine* immediately before Aguado was to testify. N.T. 7/31/97 at 131–139.

Once more, the trial court ruled that it would not absolutely forbid the Commonwealth from offering evidence of Aguado's prior conviction; but rather, would rule on its admissibility based upon Aguado's testimony. N.T. 7/31/97 at 132–136. Despite apparently reserving its ruling for a later time during the trial, the trial court indicated that it believed that the prior conviction could be used to show Aguado's intent. N.T. 7/31/97 at 133. I would find that the trial court did not err in so ruling.

¶ 6 The circumstances of the current crime and the prior crime for which Aguado was convicted are virtually identical. For instance, both crimes involved a similar location (Hart Lane), similar type of narcotic (crack cocaine), and similar style of transaction (street-corner sale). As such, I conclude that the trial court did not abuse its discretion in ruling that the prior conviction could be used to rebut Aguado's testimony, in the event he testified, on the issue of intent. *See Commonwealth v. Saxton*, 516 Pa. 196, 532 A.2d 352 (1987) (Nix, J., plurality opinion) (holding that evidence of a prior firearms conviction was admissible to rebut the defendant's statement that he never owned a gun); *Commonwealth v. Gelber*, 406 Pa.Super. 382, 594 A.2d 672 (1991), *appeal denied*, 529 Pa. 667, 605 A.2d 332 (1992) (holding that evidence of drug use and drug dealing were admissible to rebut defendant's claim of self-defense and to show motive); *Commonwealth v. Barba*, 314 Pa.Super. 210, 460 A.2d 1103 (1983) (finding that evidence that the defendant participated in other transactions involving stolen property admissible to demonstrate his knowledge that items in his possession were stolen).

¶ 7 Moreover, while I acknowledge that a nine-month gap between the two offenses existed, the gap does not preclude the use of the conviction for the limited purpose of proving Aguado's intent since the probative value of such evidence outweighs any prejudice resulting from its admission. *See Camperson, supra.* As

such, I would hold that the trial court did not err, and, therefore, I respectfully dissent as to this issue.[6]

6. I note that I reviewed Aguado's remaining claims and have found them to be meritless.