J-S19005-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERNIE B FOSTER | : | |
| | : | |
| Appellant | : | No. 627 MDA 2022 |

Appeal from the Judgment of Sentence Entered March 1, 2022
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s):  CP-35-CR-0002223-2020

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.:  **FILED: FEBRUARY 8, 2024**

Ernie B. Foster appeals from the judgment of sentence entered following his jury trial conviction for two counts of possession with intent to deliver ("PWID"), one count of firearms not to be carried without a license, and three counts each of possession of a controlled substance and possession of drug paraphernalia.[1] Foster alleges the trial court erred in admitting text messages recovered from his cell phone. We affirm.

Foster was arrested after a confidential informant set up a drug buy from Foster's acquaintance. A confidential informant told the police that he could purchase drugs from a third person, Rochelle Johnson. Police arranged a controlled buy, and Foster was a passenger in a car that Johnson drove to sell the narcotics to the confidential informant. When Foster and Johnson

_____

[1] 35 P.S. § 113(a)(30), 18 Pa.C.S.A. 6106(a)(1), 35 P.S. §§ 780-113(a)(16) and 780-113(a)(32), respectively.

arrived at the buy location, police approached the car and searched Foster and Johnson. They found in Foster's fanny pack 20 individual Ziploc baggies of cocaine, a knotted plastic sandwich bag of Fentanyl, and one knotted plastic bag containing methamphetamine tablets.[2] N.T., 12/7/21, at 87-88.

Foster was charged in Lackawanna County with PWID and other crimes. Before trial, he moved *in limine* to preclude admission into evidence of text messages the Commonwealth had produced in discovery. The texts were from Foster's phone. Foster argued that the messages were not relevant "unless they specifically relate to the events of" the day of the controlled buy. Motion in Limine, filed 11/24/21, at 1 (unpaginated). He also contended that evidence he "purchased or distributed controlled substances in Philadelphia [was] not relevant to the charges in Lackawanna County," and any probative value "will be severely overwhelmed by its prejudicial effect on the jury." *Id.* at 2.

At a hearing, the Commonwealth stated that the text messages related to "selling narcotics" and were "from August, September and throughout the summer before this incident," which "occurred in October of 2020." N.T. Motion in Limine, 11/29/21, at 3. The prosecutor explained that because Foster's "whole defense was . . . personal use," which "was his statement the day of the arrest and has been his defense the entire time," the texts "showing he is selling drugs in the months leading up to this arrest" were relevant to rebut the defense. *Id.* at 4. Foster's counsel reiterated his arguments that the

---

[2] Foster was found not guilty of PWID of methamphetamine.

texts were not relevant and unfairly prejudicial. *Id.* at 2-5. He did not deny that Foster was claiming the drugs were for personal use.

The court ordered the parties to brief their respective positions. Foster again maintained that the text messages were not relevant and unfairly prejudicial. *See* Defendant's Brief in Support of His Motions *In Limine*, filed 12/6/21, at 1, 3 (unpaginated). He again did not deny that he was claiming personal use. The court denied the motion *in limine*, and Foster proceeded to trial.

During opening statements, Foster's counsel stated that the jury would hear from the Commonwealth that Foster didn't have anything with him for the ingestion of narcotics and that they would "talk about that when the evidence comes in." N.T., Dec. 7, 2021, at 17. He also said that the drugs found on Foster differed from those sold by Johnson. *Id.* at 16. He stressed that Foster did not have any narcotics that were being sold in the transaction. *Id.*

The Commonwealth presented the testimony of Detective Harold Zech, who said that when he went to search the bag found on Foster, Foster stated, "[W]hat's inside is mine, and they're for personal use." *Id.* at 80. Detective Zech also testified regarding four text message threads from dates spanning from approximately one month to two days before the drug stop at issue – from September 9, 2020, September 18, 2020, October 1, 2020, and October 6, 2020. Each thread involved people seeking to buy narcotics. *See id.* at 94-100. For example, the Commonwealth elicited the following testimony:

Q. Detective, can you just walk us through—This one is a little bit more voluminous so I would just ask you to walk through the text messages with them. Explain to the jury why you singled these messages out for this case and for your investigation.

. . .

A. If you look in the blue, that's not going to be [Foster]'s phone. This is going to be the incoming message. This is typical. [`]This is Mina's friend. Can I get eight?[']? Just from your day-to-day occurrences you would normally identify who you are. This is basically another buyer who is friends with Mina that's reaching out to [Foster] to purchase eight— a total of eight dosage units or possibly eight grams of a certain substance.

Q. And—

A. And then you see on the green the reply is [`A]re you on Springfield[,'] which is basically him replying, you know, what is your location. Springfield is an avenue in Philadelphia.

*Id.* at 96-97.

On cross-examination, Foster's counsel questioned the detective about his doubt that the drugs were for personal use. *Id.* at 117. Counsel analogized the narcotics to counsel bringing cases of beer to a weekend trip with friends, which the detective agreed could be for personal use. *Id.* at 117-18. Counsel also noted, and Detective Zech agreed, that although the detective testified that individual packets of cocaine were indicative of selling, buyers also received the individual packets. *Id.* at 118-19. Foster's counsel also asked questions to support a finding that Foster used narcotics. *See id.* at 124 (asking about video where Foster says he doesn't use drugs, and asking whether people are honest about drug usage).

Foster then testified in his own defense. He said he did not know that Johnson intended to sell drugs during the incident in question. N.T. Trial, Dec. 8, 2021, at 101. He also said that he intended to use the drugs found in his possession. *Id.* at 104.

The jury found Foster guilty of the above-listed crimes. The trial court sentenced Foster to an aggregate term of 187 to 384 months' incarceration and nine years' probation. Foster filed a post-sentence motion, which the trial court denied. Foster filed a timely appeal.

Foster raises the following issue: "Did the trial court err when it permitted into evidence text messages allegedly recovered from a cellular telephone belonging to [Foster]?" Foster's Br. at 6.

Foster argues that the contents on the seized phone, specifically any reference to prior drug transactions "that took place at very different times and in very different places than the charged conduct," should be excluded. *Id.* at 12. He argues the Commonwealth argued the messages were admissible because Foster's defense was that the drugs were for personal use, but that "the pure act of going to trial is the result of pleading [n]ot [g]uilty[,]" and "[t]he Commonwealth cannot be allowed to introduce allegations of unrelated crimes, which have the certain effect of imbuing the jury with impermissible assumptions, and then mascaraed those irrelevant allegations as some fair rebuttal to the defendant's natural claim of innocence." *Id.* at 13. Foster argues the trial court erred in its Pa.R.Crim.P. 404(b) analysis, claiming there was no permissible, non-character reason for the admission of the text

- 5 -

messages. He further argues the prejudicial effect of the messages "was catastrophic and far beyond any, legitimate, probative value." *Id.* at 14. He argues if the court had considered relevant factors, such as strength of the other crime evidence, similarities and time lapse between the crimes, the need for the evidence, efficacy of alternate proof of the charged crimes, and the degree the evidence will rouse the jury to hostility, it would have precluded the evidence.

We review the admission of evidence for an abuse of discretion. *Commonwealth v. Kinard*, 95 A.3d 279, 284 (Pa.Super. 2014) (*en banc*). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Id.* (quoting *Commonwealth v. Martinez*, 917 A.2d 856, 859 (Pa. Super.2007)).

To be admissible, evidence must be relevant. It is relevant "'if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.'" *Id.* (quoting *Commonwealth v. Williams*, 896 A.2d 523, 539 (Pa. 2006)); Pa.R.E. 402. Even if relevant, "other bad acts evidence is inadmissible to prove a defendant's propensity to commit crime." *Id.* However, the Commonwealth may introduce bad acts evidence "for other limited purposes, including, but not limited to, establishing motive, opportunity, intent, preparation, plan, knowledge, identity or absence of

mistake or accident, common scheme or design, modus operandi, and the natural history of the case." *Id.*; Pa.R.E. 404(b)(2).

The trial court found the text messages admissible "to show [Foster's] motive, opportunity, intent, and plan for his possession of the narcotics on the date of the incident" and that "the probative value of said evidence" outweighed its potential for unfair prejudice. Trial Court Opinion, filed Nov. 15, 2022, at 15.

To be admissible to show intent or motive, evidence of other bad acts must have a logical connection with the crimes at issue. *Commonwealth v. Camperson*, 612 A.2d 482, 484 (Pa.Super. 1992) (citation omitted). Factors a court should consider when determining the admissibility to prove intent or motive include "the proximity in time between the incidents; the similarity in the circumstances surrounding the incidents; and whether evidence of the prior crime is necessary to rebut the accused's evidence or contention of accident, mistake or lack of required intent." *Id.* at 285 (quoting *Commonwealth v. Harvey*, 502 A.2d 679, 686 (Pa.Super. 1985)). Evidence of other bad acts is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice. *Kinard*, 95 A.3d at 284.

Precedent relevant to the determination of whether the text messages at issue in this case were admissible include: *Camperson*, 612 A.2d 482, *Commonwealth v. Aguado*, 760 A.2d 1181 (Pa.Super. 2000) (*en banc*), and *Kinard*, 95 A.3d 279.

In ***Camperson***, the defendant was charged with drug-related offenses based on contraband seized from his home. 612 A.2d at 482. The trial court had barred the Commonwealth from presenting during its case in chief testimony of the defendant's criminal conduct that occurred earlier on the day of the search of the home. ***Id.*** at 482-83. We concluded that the defendant had been charged with a crime involving a specific intent, PWID, and therefore the earlier conduct "was clearly relevant to show that a few hours before police found controlled substances in Camperson's residence, he had agreed to sell drugs to a third person." ***Id.*** at 484. We further disagreed with the trial court that the evidence was unduly prejudicial, noting that, "[i]f the evidence was so unduly prejudicial, . . . it is difficult to comprehend the trial court's willingness, as expressed in its opinion, to reconsider its ruling if the Commonwealth found it necessary to rebut evidence offered by the defense." ***Id.*** at 485. We noted that the Commonwealth was required to establish the narcotics found in the home were intended for distribution to others, and noted that "one of the strongest and most compelling pieces of evidence is that the defendant, in fact, had been distributing methamphetamine on the same day on which methamphetamine and cocaine were found in his home." ***Id.*** We concluded the court had abused its discretion in refusing to allow the use of the prior conduct.

In ***Aguado***, the defendant was on trial for PWID. 760 A.2d at 1183. The defendant had been convicted of PWID for a drug transaction that occurred in the same vicinity as, and nine months prior to, the conduct for which he was

on trial. He filed a motion *in limine* to preclude the admission of the prior conviction. The Commonwealth indicated it would not use the conviction during its case-in-chief. The trial court deferred ruling on whether the Commonwealth could use it as rebuttal evidence, but stated it was predisposed to admit the prior conviction as evidence of intent.

We concluded the trial court had abused its discretion. We concluded the prior conviction could not be admitted to establish the element of intent, stating the Commonwealth presented no evidence the conviction "grew out of or was in any way caused by" the prior conviction and "we [could not] conclude that [the defendant] could form and maintain his 'intent' over the nine-month period between the two incidents." *Id.* at 1186-87 (citation omitted). We further noted that the trial court had not weighed the Commonwealth's need against the potential prejudicial effect. We pointed out that the defense was that the defendant did not possess the narcotics, and therefore "the Commonwealth's need for the prior crimes evidence . . . to establish 'intent' was nonexistent." *Id.* at 1187. We concluded that evidence of a prior drug transaction that occurred nine months prior to the transaction at issue was not needed to rebut the defense. *Id.* We further noted that the prejudicial impact was "palpable." *Id.*

In *Kinard*, a defendant charged with PWID and conspiracy defended on the ground that he was merely present in his cousin's home when police searched and found drugs and paraphernalia. 95 A.3d at 281-82. At trial, the Commonwealth presented testimony regarding telephone calls the defendant

made from prison in the three months after his arrest. *Id.* at 285. During the calls, the defendant used coded language to discuss drug transactions. The trial court admitted them as relevant to show a common scheme or plan and the absence of mistake or accident. *Id.*

We concluded the evidence was properly admitted. We found the calls relevant to show there was a common plan or scheme, which was relevant to whether the defendant constructively possessed the narcotics. We also found the calls relevant to establish an intent to promote or facilitate PWID, as was necessary to prove conspiracy to commit PWID. *Id.* at 286. We thus found the calls were logically connected to the charges and supported the theory that the defendant engaged in the sale of narcotics. *Id.* We also found the calls' probative value was not outweighed by the risk of unfair prejudice. We pointed out that the calls tended to show that his presence at the home was not a mistake, and this outweighed the prejudicial impact. We noted that the evidence "was critical in establishing the absence of mistake or accident and a common scheme, plan or design." *Id.*

Here, the trial court did not abuse its discretion in admitting the text messages. Unlike *Aguado*, Foster claimed he possessed the drugs for personal use, not that he did not possess them. Here, the prosecution informed the court that Foster was claiming personal use for the drugs, and Foster never denied it (indeed, he defended on that basis). The trial court was fully justified in considering the text messages logically relevant to rebut that defense. Moreover, as in *Camperson*, and unlike in *Aguado*, the messages

- 10 -

were close in time to the conduct at issue, ranging from two days to one month prior. Further, as in **Kinard**, the probative value of the messages to rebut the defense of personal use outweighed any potential for unfair prejudice.[3]

Judgment of sentence affirmed.

Judge Sullivan joins the memorandum.

President Judge Emeritus Bender files a dissenting memorandum.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 02/08/2024

---

[3] **See also Commonwealth v. Akhmedov**, 216 A.3d 307, 319 (Pa.Super. 2019) (*en banc*).