J-A16009-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY JOEL ESPINAL | : | |
| | : | |
| Appellant | : | No. 2136 EDA 2024 |

Appeal from the Judgment of Sentence Entered July 3, 2024
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0002107-2022

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY LAZARUS, P.J.:          **FILED JANUARY 23, 2026**

Anthony Joel Espinal appeals from the judgment of sentence, entered in the Court of Common Pleas of Northampton County, following his convictions of one count each of person not to possess firearm[1] and possession of a controlled substance (fentanyl) with intent to deliver (PWID).[2] After careful review, we affirm.

In March of 2022, Detective Edward Fox of the Bethlehem Township Police Department was contacted by the Pennsylvania Attorney General's Office requesting information on Caitlyn Norder, who had connections to Bethlehem Township and was believed to be the girlfriend of a suspect in a shooting that occurred in February 2022 in Wilkes-Barre Township. ***See*** Trial

---

[1] 18 Pa.C.S.A. § 6105(b).

[2] 35 P.S. § 780-113(a)(30).

Court Opinion Sur Omnibus Pretrial Motion, 4/8/24, at 1. Detective Fox, who had prior knowledge of Norder and was aware of her, discovered Norder was staying at the Woodspring Suites in Bethlehem Township. *Id.* at 1-2.

On March 23, 2022, Detective Fox, along with other officers from Bethlehem Township, Wilkes-Barre Townshp, and the Attorney General's office, conducted surveillance of the hotel. *See* N.T. Jury Trial, 4/30/24, at 36. Detective Fox spoke with the hotel manager, Asael Lopez, who informed him that Norder and Espinal had engaged in an argument two days earlier, and that Norder had exited their hotel room screaming that her boyfriend had a gun. *See* Trial Court Opinion Sur Omnibus Pretrial Motion, 4/8/24, at 2. Captain Shaun Powell of the Bethlehem Township Police Department began preparing an application for a search warrant for Norder and Espinal's hotel room based on the information provided by Norder to hotel employees that her boyfriend—Espinal—possessed a gun and was a felon not to possess a firearm. *Id.* at 5-6.

While in the lobby, Detective Fox encountered Norder, and they recognized each other. *See* N.T. Jury Trial, 4/30/24, at 39. Norder appeared nervous and told Detective Fox that there was a gun on the dresser in her hotel room. *See* Trial Court Opinion Sur Omnibus Pretrial Motion, 4/8/24, at 3. Taking into consideration the safety of the other occupants in the hotel, the information that there was a gun present in Norder and Espinal's hotel room, the recent argument Lopez overhead regarding a gun, and that Espinal was potentially connected to the previous shooting in Wilkes-Barre, the police

decided to enter Norder and Espinal's hotel room, prior to securing a search warrant, based on their belief that exigent circumstances existed. *Id.* Norder did not have a key to the room, so the police and Norder proceeded to the hotel room and Norder asked Espinal to open the door for her. *See* N.T. Jury Trial, 4/30/24, at 40-41. Espinal, who was naked at the time, opened the door and was immediately seized and cuffed by police. *Id.*

Espinal was placed on a chair within the hotel room and asked if he could put on his pants. *See* N.T. Jury Trial, 4/30/24, at 65-66. Corporal Jeremy Anderson with the Bethlehem Police Department patted down the pants prior to providing them to Espinal and found 11 glassine bags containing what Corporal Anderson "presumed to be heroin." *Id.* at 66. The police also observed "a marijuana roach" near the hotel room's kitchen sink. *See* Trial Court Opinion Sur Omnibus Pretrial Motion, 4/8/24, at 4. Corporal Anderson informed Captain Powell of the forementioned discoveries. *Id.* at 5.

Approximately 30 minutes to an hour after Espinal was handcuffed, a search warrant for the hotel room was obtained and executed. *Id.* The search of the hotel room yielded, *inter alia*,[3] a .9mm Marakov handgun and

_____

[3] The .9mm Marakov handgun was found inside an orange Nike shoe box along with a cloth bag and an Apple AirPod box that both contained packages of fentanyl. *See* N.T. Jury Trial, 4/30/24, at 74-78. Police also recovered from the hotel room a container of rubber bands, a female's pink jacket, a male's black jacket, a backpack containing blank check stock, four new cases of Apple AirPods, miscellaneous documents and folders, a ledger, a box of .9mm ammunition and loose .9mm ammunition, rolling papers, and a black wallet with Espinal's driver's license and a room key for the hotel room. *Id.* at 84-104.

approximately 30 grams of fentanyl, which resulted in Espinal's arrest, after which he was charged with the above-mentioned offenses. **See** N.T. Jury Trial, 4/30/24, at 88-89; **id.**, 5/1/24, at 99-107.

On March 14, 2023, Espinal filed an omnibus pre-trial motion to suppress the drugs found in his hotel room. Additionally, on November 8, 2023, Espinal filed a motion to dismiss pursuant to Pa.R.Crim.P. 600. Following a hearing held on January 25, 2024, and submission of briefs by both Espinal and the Commonwealth, the trial court denied both motions on April 8, 2024. On April 16, 2024, Espinal filed a motion to sever the person not to possess firearm charge from the PWID charge. At trial, the trial court bifurcated the charges, and the PWID charge was tried first before the same jury. **See id.**, 4/30/24, at 1.

At the PWID trial, the Commonwealth introduced a number of exhibits extracted from a red iPhone that was obtained following Espinal's arrest. **See id.** at 56-57 (Detective Fox testifying he obtained red iPhone while at police station and received passcode from Norder); **see also id.**, 5/1/24, at 10-13. The Commonwealth presented text message exchanges and photos that proved Espinal operated the red iPhone. **See id.**, 5/1/24, at 25-26; 39-40 ("selfie" photo of Espinal holding red iPhone). Patrick Brehm, an investigator with the Bethlehem Township Police Department who reviewed and analyzed the data extracted from the iPhone, testified to authenticate the text messages and photos extracted from the iPhone. **See id.** at 20-23.

Relevant to this appeal, the Commonwealth introduced Exhibits 41, 42, 43, 44, and 45 (text message exhibits), all of which were extracted from the red iPhone.  Exhibit 41 was a screenshot of a February 11, 2022 text message exchange between an iPhone user with the telephone number +1 (484) 828-5936 and an individual identified as "Jcruz."  **See id.** at 45.  The iPhone user sent a thumbnail image,[4] which "depict[ed] a number of blue tablets in small plastic bags," followed by a text message that stated, "I got perks wtw[.]"  **Id.**; **see also** Commonwealth's Exhibit 41.  Jcruz answered "Price per pop and per dozen" and the iPhone user replied, "150 for ten after that number drop lmk how many we reasonable n they official[.]"  Commonwealth's Exhibit 41.

Exhibit 42 was an enlarged reproduction of the thumbnail image from the above-mentioned text message exchange.  **See** N.T. Jury Trial, 5/1/24, at 47-57 (parties agreeing Exhibit 42 is only the "left side," which depicted blue tablets in small plastic bags).

Exhibit 43 was a screenshot of a March 18, 2022 text message exchange between the telephone number +1 (213) 348-8408 and a person identified as "Lopa" regarding the purchase of "30s," which Investigator Brehm testified "indicat[ed] prescription medication," and included a thumbnail image sent with "three flame emojis."  **Id.** at 60; **see also** Commonwealth's Exhibit 43.

Exhibit 44 was an enlarged reproduction of an image from the above text message exchange, which depicted "blue tablets. . . with the M and the

_____

[4] This term refers to a picture embedded in a text message.  **See id.** at 46.

- 5 -

square on one side and the 30 over [the] top half of a divided tablet. And they appear to be packaged, a number of pills in a number of plastic bags." *See* N.T. Jury Trial, 5/1/24, at 64. There was a black mark obscuring some of the image, which was taken on March 18, 2022. *See* Commonwealth's Exhibit 44.

Exhibit 45 consisted of two images side by side: on the left side was the image from Exhibit 44 and on the right side was an image of blue tablets, which Investigator Brehm testified was an image of the fentanyl recovered by the police from the hotel room during the search. *See* N.T. Jury Trial, 5/1/24, at 64.

Prior to and during the Commonwealth's introduction of the text message exhibits, defense counsel objected to their admission on grounds of relevancy and that they were inadmissible as evidence of prior bad acts that was more prejudicial than probative. *Id.* at 33-36, 45, 50-51, 56-57. The trial court overruled defense counsel's objections and allowed the evidence because "it was relevant to . . . demonstrate [Espinal's] possession with [the] intent to deliver." Trial Court Opinion, 11/13/24, at 3.

Additionally, the Commonwealth admitted two exhibits featuring a firearm (firearm exhibits). Exhibit 46 was an image of a computer on a desk and other items with a firearm partially visible on the left side of the image. The photograph was taken by the red iPhone on March 3, 2022. Exhibit 47 consisted of two images side by side: the image from Exhibit 46 was on one

side and the other side contained a zoomed-in image of the portion of Exhibit 46 depicting the firearm. **See** Commonwealth's Exhibit 47.

Defense counsel objected to the admission of the firearm exhibits on the grounds that they were not relevant and were inadmissible as prior bad acts because they were more prejudicial than probative. **See** N.T. Jury Trial, 5/1/24, at 72-80. The trial court overruled defense counsel's objections and found that the firearm exhibits were "relevant to the ultimate issue [of] whether or not [Espinal] possessed [drugs] with intent to deliver[.]" **Id.** at 79.

On May 2, 2024, Espinal was convicted by a jury of the above-mentioned offenses.[5] The trial court deferred sentencing and ordered the preparation of a presentence investigation report on the same day. On July 3, 2024, the court sentenced Espinal to an aggregate sentence of 144 to 288 months' incarceration. On July 15, 2024, Espinal filed a timely post-sentence motion to modify his sentence, which the trial court denied on July 16, 2024.[6]

Espinal filed a timely notice of appeal. Both Espinal and the trial court complied with Pa.R.A.P. 1925. On appeal, Espinal asserts that the trial court

---

[5] The one-day jury trial on Espinal's persons not to possess a firearm charge immediately followed his PWID trial. **See id.**, 5/2/24, at 160-99.

[6] Generally, a written post-sentence motion shall be filed no later than 10 days after imposition of sentence. **See** Pa.R.Crim.P. 720(1). Here, the last day of the 10-day period for Espinal to file a post-sentence motion fell on Saturday, July 13, 2024. **See** 1 Pa.C.S.A. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday . . . such day shall be omitted from the computation."). Espinal filed his post-sentence motion on Monday, July 15, 2024. Thus, the motion was timely.

abused its discretion in admitting the text message and firearm exhibits. *See* Appellant's Brief, at 4.

Both of Espinal's claims challenge evidentiary rulings of the trial court, which we review for an abuse of discretion. *See Commonwealth v. Brown*, 212 A.3d 1076, 1086 (Pa. Super. 2019). "An abuse of discretion exists where there is an overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record." *Commonwealth v. Gross*, 241 A.3d 413, 418 (Pa. Super. 2020) (internal quotation marks and citation omitted).

Relevance is the threshold question for admissibility of evidence. *Commonwealth v. Cook*, 952 A.2d 594, 612 (Pa. 2008); *see also* Pa.R.E. 402 ("All relevant evidence is admissible."). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable[,] or supports a reasonable inference or presumption regarding a material fact." *Commonwealth v. Semenza*, 127 A.3d 1, 7 (Pa. Super. 2015) (citation omitted). However, evidence may be excluded where its probative value is outweighed by a danger of confusing the issues, misleading the jury, or unfair prejudice. *See Semenza*, *supra*; *see also* Pa.R.E. 401 ("[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence").

- 8 -

Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. *See Commonwealth v. Sherwood*, 982 A.2d 483, 497 (Pa. 2009), citing Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Sherwood*, 982 A.2d at 497, citing Pa.R.E. 404(b)(2). Evidence of other bad acts is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice. *Commonwealth v. Kinard*, 95 A.3d 279, 284 (Pa. Super. 2014) (en banc). In order to be deemed sufficiently probative, the alleged prior bad acts must not be too far removed in time and place from the crime at issue. *See Commonwealth v. Reed*, 990 A.2d 1158, 1168 (Pa. 2010).

Additionally, evidence of other bad acts must have a logical connection with the crimes at issue. *Commonwealth v. Camperson*, 612 A.2d 482, 484 (Pa. Super. 1992) (citation omitted). Factors a court should consider when determining the admissibility to prove intent or motive include "the proximity in time between the incidents; the similarity in the circumstances surrounding the incidents; and whether evidence of the prior crime is necessary to rebut the accused's evidence or contention of accident, mistake[,] or lack of required intent." *Id.* at 285 (internal citations omitted). We are also mindful that a trial court is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts

are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." **Commonwealth v. Paddy**, 800 A.2d 294, 308 (Pa. 2002) (citation omitted).

To determine the relevancy of the prior bad acts evidence, we must review the charges the Commonwealth sought to prove. Here, Espinal was charged with possession with intent to deliver, which requires the Commonwealth to prove both unlawful possession of a controlled substance and an intent to deliver the controlled substance. **See Commonwealth v. Lee**, 956 A.2d 1024, 1028 (Pa. Super. 2008).

In his first issue on appeal, Espinal argues that the trial court erred in admitting the text message exhibits because there was no connection between the drugs mentioned in the text messages and the drugs found in Espinal's hotel room. **See** Appellant's Brief, at 10-12. Espinal argues that the exhibits of the prior drug-sale activity, without a link between the evidence and his charges, are not probative of whether Espinal possessed drugs on the day of his arrest and, thus, the evidence only had a "tendency to blacken [his] character[.]" **Id.** at 11-12. Specifically, relying on **Commonwealth v. Aguado**, 760 A.2d 1181 (Pa. Super. 2000) (en banc), Espinal contends that the text message exhibits were inadmissible under Rule 404(b) because there were no sufficient grounds to believe that his PWID "'grew out of or was in any way caused by the prior set of facts and circumstances'" presented in the text messages. Appellant's Brief, at 11, quoting **Aguado**, 760 A.2d at 1186.

In ***Aguado***, the defendant was on trial for PWID and had been previously convicted of PWID for a drug transaction that occurred in the same vicinity as, and nine months prior to, the conduct for which he was on trial. Aguado filed a motion in limine to preclude the admission of the prior conviction. The Commonwealth indicated it would not use the conviction during its case-in-chief. At trial, the court stated that it would defer its ruling until Aguado testified but suggested that it would allow evidence of the prior conviction as evidence of intent. Thereafter, Aguado chose not to testify on his own behalf.

On appeal, this ***Aguado*** Court concluded that Aguado's prior conviction could not be admitted to establish the element of intent, stating the Commonwealth presented no evidence the conviction "grew out of or was in any way caused by" the prior conviction and "we [could not] conclude that [the defendant] could form and maintain his 'intent' over the nine-month period between the two incidents." ***Id.*** at 1186-87 (citation omitted). The Court reasoned that since Aguado claimed he was arrested simply because he was proximate to the drugs, the disputed issue was possession, not intent, and "the Commonwealth's need for the prior crimes evidence in order to establish 'intent' was nonexistent." ***Id.*** at 1187. The Court further noted that the trial court had not weighed the Commonwealth's need to present the evidence against its potential prejudicial effect and that the prejudicial impact was "palpable." ***Id.***

Here, a review of the trial transcript reveals that Espinal countered the Commonwealth's evidence by repeatedly alleging that he did not **intend to sell** the drugs found in the hotel room. *See Lee*, *supra*. Specifically, at trial, the defense's sole witness, Norder, testified that her "sugar daddy" gave her and Espinal the drugs found in the hotel room, and that the drugs were for personal use. *See* N.T. Jury Trial, 5/2/24, at 50-52 ("[Defense counsel:] I guess were there a lot of drugs in the room? [Norder:] Yes. . . . [Defense counsel:] Was [Espinal] using the drugs? [Norder:] Yes."). Norder also testified that she and Espinal were not selling the drugs to anyone. *Id.* at 50-52. At closing, defense counsel contended that there was no evidence that Espinal sold or intended to sell the drugs found in the hotel room. *Id.* at 100. Thus, in contrast to *Aguado*, Espinal specifically disputed the element of intent to sell (versus simple possession) at trial. *See Commonwealth v. Foster*, 315 A.3d 63, *12 (Pa. Super. 2024) (Table)[7] (distinguishing *Aguado* when Commonwealth introduced text messages regarding drug transactions to rebut defendant's claim he possessed drugs for personal use, not that he did not possess them). Therefore, we conclude that *Aguado* is not controlling here.

Nor are we persuaded that the prior acts portrayed in the text message exhibits were too remote or unconnected to the present case to be of any

---

[7] *See* Pa.R.A.P. 126(a)-(b) (unpublished, non-precedential decisions of this Court, filed after May 1, 2019, may be cited for persuasive value).

probative value. The text message exhibits contained references to the sale of fentanyl, the same drug found in the hotel room. The text message exchanges and pictures occurred a little over one month or less prior to his arrest.[8] *See Foster*, *supra* (finding text messages of prior drug transactions sent within two days to one month prior to defendant's arrest for PWID were "close in time to the conduct at issue"); *Reed*, *supra*. Thus, the text message exhibits regarding the sale of fentanyl were probative of Espinal's intent to sell the large amount of drugs found in his hotel room. *See Camperson*, *supra*. The text message exhibits were logically connected to the criminal charges against Espinal; they supported the Commonwealth's theory that Espinal intended to sell fentanyl, not just that he possessed the drug for personal use. *See Commonwealth v. Weeks*, 301 A.3d 887, \*22-25 (Pa. Super. 2023) (Table) (text messages involving prior drug transactions admissible because text messages were logically connected to defendant's criminal charges and reflect knowledge of drug dealing).

Although we have concluded that the evidence was admissible, we must further evaluate whether the probative value of the evidence outweighs its potential for unfair prejudice under Pa.R.E. 403.

> In conducting the probative value/prejudice balancing test, courts must consider factors such as the strength of the "other crimes" evidence, the similarities between the crimes, the time lapse

---

[8] We note that arguments related to the remoteness of the acts generally go to the weight, and not the admissibility, of prior bad acts evidence. *Commonwealth v. Ulatoski*, 371 A.2d 186, 191 (Pa. 1977); *accord Reed*, 990 A.2d at 1168.

between crimes, the need for the other crimes evidence, the efficacy of alternative proof of the charged crime, and "the degree to which the evidence probably will rouse the jury to overmastering hostility." McCormick, Evidence § 190 at 811 (4th ed. 1992). ***See also Commonwealth v. Frank***, [] 577 A.2d 609 ([Pa.] 1990) (enumerating balancing test factors, including ability for limiting instruction to reduce prejudice).

***Commonwealth v. Weakley***, 972 A.2d 1182, 1191 (Pa. Super. 2009).

Espinal contends that, like in ***Aguado***, the trial court failed to weigh the prejudicial impact of the text message exhibits and, therefore, was unable to conclude whether the probative value outweighed its potential to prejudice the jury. ***See*** Appellant's Brief, at 12. We disagree.

When defense counsel objected to admission of the text message exhibits, the following exchange occurred:

THE COURT: So, [defense counsel,] doesn't—and part of the Commonwealth's case is proving his intent to deliver. And intent to deliver, so wouldn't messages in his phone, even if it's several weeks before, be relevant to [its] burden of proving an intent that he delivers these things versus just possesses them?

[DEFENSE COUNSEL]: Judge, I don't believe so. I think they would be relevant to charging him with some PWI[D], you know, in February or early March. But it's not relevant to whether, with respect to the drugs[] that he was supposedly possessing on March 23[,] 2022 [(the day of his arrest),] that those drugs were possessed with the intent to deliver.

[L]et's even assume that he was—that he was a drug dealer, that he was selling drugs, [PWID] in February and early March, that is still not probative of [whether], on the day in question, those drugs were possessed with intent to deliver.

* * *

THE COURT: I understand your concern about certain items in terms of date, but if we're looking at matters from, this is what, about three to four weeks before, a couple weeks before?

- 14 -

[COMMONWEALTH]: One is five days before. The other one is four weeks before.

THE COURT: I find it relevant, but noting that the specific messages that will be voluntarily removed by the Commonwealth, I'm going to overrule your objection. I'll allow that evidence to come in.

*Id.* at 35-36. The foregoing exchange demonstrates that the trial court conducted a probative value/prejudice balancing test, considering the time lapse between the crimes and the Commonwealth's need to present the evidence. *See Weakley*, *supra*. Therefore, and in contrast to *Aguado*, the trial court balanced the Commonwealth's need for the prior bad acts evidence against its potential prejudice. *See* N.T. Jury Trial, 5/1/24, at 35-36 (following discussion of need for messages to prove intent, trial court stating, "I understand your concern about certain items in terms of date, but [] I find it relevant[.]"). *See Kinard*, 95 A.3d at 286 (holding trial court properly exercised its discretion in admitting evidence of subsequent bad acts, where probative value of acts, though "highly prejudicial," outweighed potential for prejudice in that it was **circumstantial evidence of appellant's intent**, proof of his motive, and identity as actor in prior PWID charge). Accordingly, we find no abuse of discretion by the trial court in admitting the text message exhibits. As such, Espinal's first claim fails. *See Brown*, *supra*.

In his second issue, Espinal argues two separate theories as to how the trial court erred in admitting the firearm exhibits. First, he contends that the firearm exhibits, dated March 5, 2022, were not probative of whether that firearm was the same firearm found in Espinal's hotel room on March 23,

- 15 -

2022, and that the Commonwealth failed to justify an inference under the similar-weapon exception that the firearm was the same firearm found in Espinal's hotel room. **See** Appellant's Brief, at 13-14. Secondly, Espinal argues that the firearm exhibits were inadmissible as evidence of prior bad acts because a photograph of a firearm was not probative of him possessing drugs with intent to sell them 18 days later when he was arrested in the hotel room on March 23, 2022. **Id.** at 13. Espinal also contends that the trial court failed to weigh whether the probative value of the evidence outweighed its potential to unfair prejudice. **Id.** at 14.

"With regard to the admission of weapons evidence, such evidence is clearly admissible where it can be shown that the evidence was used in the crime charged." **Commonwealth v. Edwards**, 762 A.2d 382, 386 (Pa. Super. 2000). However, where the weapon cannot be positively identified as related to the crime, "[t]he general rule is that . . . such a weapon is not admissible as evidence." **Commonwealth v. Robinson**, 721 A.2d 344, 351 (Pa. 1998).

A carveout to these precepts is the similar-weapon exception, which our Supreme Court has explained as follows:

> A weapon not "specifically linked" to the crime is generally inadmissible; however, the fact [the] accused had a weapon or implement suitable to the commission of the crime charged . . . is always a proper ingredient of the case for the prosecution. Any uncertainty that the weapon is the actual weapon used in the crime goes to the weight of such evidence. **The only burden on the prosecution is to lay a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime.**

***Commonwealth v. Christine***, 125 A.3d 394, 400 (Pa. 2015) (citations and quotation marks omitted) (emphasis added). However, our Supreme Court also held that mere "similarity" is not enough to satisfy this exception. Rather, the foundation must support an inference that they were the same weapon. ***See id.*** ("To the extent that cases affirm use of [the similar-weapon exception] strictly on the basis of similarity, without an inference they were the weapons used, we reject them.").

Here, based on our review of the record, we find that the similar-weapon exception was inapplicable and thus, to the extent that the trial court concluded otherwise, it erred. While the Commonwealth introduced the firearm exhibits as well as the firearm found in the hotel room, the Commonwealth failed to lay a foundation to support an inference that the two firearms could have been the same. ***See Christine***, ***supra***. Neither Investigator Brehm nor Corporal Anderson testified to a connection between the firearm in the exhibits and the firearm found in the hotel room. Moreover, there was no other evidence introduced to permit the jury to infer that the two firearms could have been the same. ***See*** N.T. Jury Trial, 4/30/24, at 75-76 (Corporal Anderson testifying as to specific make and model of firearm found in orange Nike shoebox with cloth bag containing drugs in hotel room on March 23, 2022); ***id.***, 5/1/24, at 82 (Investigator Brehm testifying photo taken on March 5, 2022 appeared to partially portray black pistol). Without more, the Commonwealth's argument rested solely on the fact that the firearm in the photograph was "similar" to the firearm in the hotel room; such

a foundation was rejected by this Court in **Christine**. **See Commonwealth v. Johnson**, 2025 Pa. Super. Unpub. LEXIS 2902, *15-20 (Pa. Super. 2025) (photograph of firearm from defendant's phone improperly admitted under similar-weapon exception when victim's testimony that assailant possessed "a black firearm," without more, did not support inference firearm in photograph was same weapon used in crime).

Nevertheless, the inapplicability of the similar-weapon exception does not end our analysis. **See Christine**, 125 A.3d at 402 (where similar-weapon exception is inapplicable, "admission on other grounds remain[s] possible"). In that regard, the trial court found that the firearm exhibits were relevant and admissible under Rule 404(b) to prove Espinal's intent to sell the drugs and not simply possess them. **See** N.T. Jury Trial, 5/1/24, at 79. **See also id.** at 76-78 (Commonwealth arguing firearm exhibits show Espinal's intent).

We conclude the trial court abused its discretion in admitting the firearm exhibits under Rule 404(b) as well. **See Gross**, **supra**. While the presence of a firearm may be a relevant factor for consideration in the context of a drug possessor's intent to deliver, **see Commonwealth v. Ratsamy**, 934 A.2d 1233, 1238 (Pa. 2007), the Commonwealth failed to establish how a photograph depicting part of an unidentified firearm taken 18 days prior to Espinal's arrest had any connection to the drugs found in Espinal's hotel room or the sale of those drugs. Accordingly, we cannot agree that the firearm exhibits were relevant to Espinal's intent on the day of his arrest. **See Semenza**, **supra**. However, we find that the admission of this evidence was

harmless error, as there was overwhelming properly admitted evidence to support Espinal's conviction and the prejudicial effect was insignificant.

"An error may be deemed harmless, *inter alia*, where the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict." **Commonwealth v. Moore**, 937 A.2d 1062, 1073 (Pa. 2007) (citation omitted).

All of the facts and circumstances surrounding the possession of a controlled substance are relevant in making a determination of intent to deliver. **See In re R.N.**, 951 A.2d 363, 367 (Pa. Super. 2008). Relevant factors include "the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large[] sums of cash found in possession of the defendant." **Ratsamy**, 934 A.2d at 1237-38 (citation omitted). Further, "the intent to deliver may be inferred from possession of a large quantity of controlled substance." **Commonwealth v. Brockman**, 167 A.3d 29, 39 (Pa. Super. 2017) (citation omitted).

Here, the Commonwealth established, through the detailed testimony of its witnesses, that a large amount of drugs were found in Espinal's hotel room. **See** N.T. Jury Trial, 4/30/24, at 66 (Corporal Anderson testifying Espinal's pants' pocket contained eleven "baggies" with powder, which tested as heroin and fentanyl); **id.**, 5/1/24, at 102-105 (Adam Shober, forensic drug analyst for Pennsylvania State Police, testifying drugs found in shoe box

- 19 -

comprised of 22 grams of fentanyl and pills in male's black jacket's pocket amounted to 8 grams of fentanyl). **See Brockman**, **supra**. The Commonwealth also presented the text message exhibits referencing drug sales and testimony discussing the packaging of the drugs and how such packaging indicates the drugs were packaged for sale. **See** N.T. Jury Trial, 4/30/24, at 67-69, 82 (Corporal Anderson testifying drugs in shoe box and drugs found in Espinal's pants' pocket were packaged in plastic bags and stamped with same Superman logo and word "Super" underneath); **id.**, 5/1/24, at 45 (Pennsylvania State Police Trooper Michael Acevedo testifying manner in which drugs packaged and labelled indicates drugs being prepared for sale); **id.** at 45-67 (Investigator Brehm testifying to text messages found in Espinal's phone referencing prior drug sales). **See Ratsamy**, **supra**. Further, the Commonwealth presented evidence that a firearm was discovered in the same box as the drugs and Trooper Acevedo testified that drug dealers often carry firearms and keep firearms in close proximity to their drugs. **See** N.T. Jury Trial, 4/30/24, at 88-89 (Corporal Anderson testifying Marakov firearm found in box with drugs in Espinal's hotel room); **id.**, 5/1/24, at 153 (Trooper Acevedo's testimony regarding relationship between drug dealers and firearms). The Commonwealth also presented evidence to connect Espinal with the firearm found in the hotel room. **Id.**, 4/30/24, at 96-97 (Commonwealth admitting into evidence backpack found in hotel room containing, among other things, documents with Espinal's name, box of.9 millimeter rounds for Marakov firearm, and loose .9 millimeter ammunition).

***See Ratsamy***, ***supra***.   Therefore, the Commonwealth presented overwhelming evidence that Espinal had the requisite possession and intent for PWID.  ***See Moore***, ***supra***.

Finally, while Espinal contends that the firearm exhibits were unduly prejudicial, he has failed to show that, against all the other evidence admitted at trial, the firearm exhibits were so prejudicial as to impact the verdict.  ***See Commonwealth v. Hairston***, 84 A.3d 657, 671-72 (Pa. 2014) (stating erroneous admission of evidence may be harmless error if error did not prejudice defendant or "properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict").  Therefore, while the trial court abused its discretion by admitting the firearm exhibits, we conclude that it was harmless error.  Thus, Espinal's second claim fails.

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 1/23/2026

- 21 -